Roger Lewis ZACHERY

v.

TREASURE LAKE OF GEORGIA, INC. (GA.), et al.

Civ. A. No. 1067.

United States District Court, N. D. Georgia, Newnan Division.

Feb. 11, 1974.

Weiner & Bazemore, Jonesboro, Ga., for plaintiff.

Tisinger & Tisinger, Carrollton, Ga., Jones, Bird & Howell, Atlanta, Ga., for defendants.

## ORDER

HENDERSON, District Judge.

This civil action is brought pursuant to the Interstate Land Sales Full Disclosure Act (hereinafter referred to as "ILSFDA") 15 U.S.C. § 1701 et seq., for damages and equitable relief for alleged omissions and material misrepresentations by the defendants with respect to the sale of certain real property. Jurisdiction is conferred under 15 U.S.C. § 1710. Presently pending are motions for summary judgment by two of the defendants.

Named as defendants in this suit are four corporations, to-wit: (1) Great Northern Development Company (hereinafter referred to as "Great Northern") a Pennsylvania corporation which is the wholly owned subsidiary of another Pennsylvania corporation, Treasure Lake, Inc.; (2) Treasure Lake of Georgia, Inc. incorporated under the laws of Georgia (hereinafter referred to as "Treasure Lake (Georgia)"), a subsidiary of Great Northern; (3) Westinghouse Credit Corporation (hereinafter

referred to as "Westinghouse"), a Delaware corporation; and (4) Treasure Lake of Georgia, Inc. incorporated under the laws of Delaware (hereinafter referred to as "Treasure Lake (Delaware)"), a subsidiary of Westinghouse.

The plaintiff is the present owner, subject to certain security interests, of two lots in the "Treasure Lake Subdivisison" located in Carroll County, Georgia. He acquired this property on April 11, 1971 upon execution of the "Articles of Agreement" under which these lots were sold to him by the "defendants Treasure Lake and Great Northern." [1] On each lot, he simultaneously executed an instrument denominated as a "Statement of Transaction and Joint Federal Truth in Lending Disclosure Statement of Westinghouse Credit Corporation and Great Northern Development Co.", which only disclosed the terms of financing the unpaid balance of the purchase price.[2] Shortly thereafter, the plaintiff received a letter from the "president of Treasure Lake, Inc." accompanied by receipts for the down payment on the two lots.[3] A subsequent letter from the same party dated April 26, 1971, informed the plaintiff that "Westinghouse Credit Corporation has provided a loan for the balance of your purchase price and payments will be made direct to them." [4] This was confirmed by two letters dated May 13, 1971 from Westinghouse, identical except for reference to different lot numbers, in which the plaintiff was apprised that his "land purchase contract with [Treasure Lake of Georgia] has been assigned to Westinghouse Credit Corporation." [5]

On October 1, 1971 a vice president of "Treasure Lake, Inc." wrote to all property owners in the Treasure Lake Subdivision, including the plaintiff, in an effort to appease some of their concerns, and which contained the following statement: [6]

> Treasure Lake is not in financial difficulty. This fact can be easily verified. It is important to point out here that Westinghouse Credit Corporation is buying all our Sales Contracts in Georgia, which would not happen if we were in financial difficulty.

The plaintiff's final allegations of fact concern letters dated January 6, 1972 and March 28, 1972 from principles of Great Northern and Treasure Lake respectively, which also purportedly bear on his claims under the ILSFDA.[7]

The first count of the complaint charges the "defendants" generally with misrepresentations violating the ILSFDA.[8] The second count attributes allegedly illegal activities more specifically to the "defendants Treasure Lake and Great Northern and various agents thereof." [9]

### MOTION FOR SUMMARY JUDGMENT BY WESTINGHOUSE CREDIT CORP.

■ In support of its motion, Westinghouse argues that it is not subject to liability under the ILSFDA since it was not acting as either a "developer" or "agent" of a developer within the meaning of those terms under that Act in the sale of these lots to the plaintiff.

---

1. See Plaintiff's Complaint, Count One, paragraph 8; Count Two, paragraph 2; and Plaintiff's Exhibits B–1 and B–2. In his original complaint, the plaintiff makes no distinction between the separate Georgia and Delaware corporations in his general reference to "Treasure Lake". However, in his "Reply to Counterclaim of Defendants Westinghouse Credit Corporation and Treasure Lake of Georgia, Inc. (Delaware)", he incorporates all references in the original complaint to "Treasure Lake" and specifically directs them against the Delaware corporation.

2. See Plaintiff's Exhibits D–1 and D–2.

3. See Plaintiff's Exhibits E–1 and E–2.

4. See Plaintiff's Exhibit F.

5. See Plaintiff's Exhibits G–1 and G–2.

6. See Plaintiff's Exhibit H, p. 2, para. 3.

7. See Plaintiff's Exhibits I and K.

8. Plaintiff's Complaint, Count One, para 9.

9. Plaintiff's Complaint, Count Two, para. 2 (A) through 2(E).

Civil liabilities are imposed by the ILSFDA only upon a "developer" or an "agent". 15 U.S.C. § 1709. A "developer" is defined in this Act as:

. . . any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision. . . .

15 U.S.C. § 1701(4). The statutory definition of an "agent" is:

. . . any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision. . . .

15 U.S.C. § 1701(5).

Resolution of this motion requires examination of Westinghouse's relationship to other parties in this suit and to the transactions in question. From the uncontroverted description of the facts advanced by this defendant in support of its motion,[10] Westinghouse had no involvement whatsoever with the Treasure Lake Subdivision in Carroll County prior to October 20, 1970. On that date, Westinghouse entered into an "Indemnity, Guarantee and Reserve Agreement" with Great Northern and its subsidiary Treasure Lake (Georgia) among others.[11] Pursuant to that agreement, Great Northern transferred to Westinghouse an existing portfolio of installment land sales contracts for previously sold lots in the Treasure Lake Subdivision. Additionally, Westinghouse thereby agreed to make direct loans to subsequent purchasers of lots from Great Northern in that subdivision. The agreement did not convey to Westinghouse any property interest in the subdivision other than that required to insure that it would have a prior claim to the land covered by each deed to secure debt and land sales contract transferred to it.[12] Westinghouse did not assume any power or authority to oversee, influence or control subsequent land sales transactions between Great Northern or Treasure Lake (Georgia) and future lot purchasers. Finally, the agreement expressly provided that:

Great Northern will diligently discharge all of Great Northern's obligations, both express and implied, to each buyer under a land contract and each maker of any note held by [Westinghouse].[13]

This agreement obviously created only the relationship of lender and borrower between Westinghouse and those parties, such as the plaintiff, purchasing lots from the owners and developers of the subdivision, Great Northern and Treasure Lake (Georgia). Indeed, at the time the plaintiff entered into the contract for sale of the lots in this suit, Westinghouse furnished those individuals purchasing lots financed by it with a coupon book [14] containing the statement that:

Other than providing financing to facilitate your purchase of the land, Westinghouse Credit Corporation is in no way related to the development of the project or the sale of the lots, and makes no representations with respect to the land or its suitability for any purpose.

Although there were several subsequent developments in the relationship of Westinghouse with Great Northern and Treasure Lake (Georgia), at all times pertinent to the plaintiff's complaint, its dealings with the purchasers of lots in the subdivision remained unchanged. From the date of the plaintiff's purchase of his lots on April 11, 1971, to the date of the last incident related in the complaint, March 28, 1972, Westinghouse acted only as a financier of lot purchases. Throughout this entire period, Great Northern and Treasure Lake

---

10. See affidavit of John R. McClester, president of Westinghouse Credit Corporation.

11. Exhibit B to the McClester affidavit, see n. 10, supra.

12. Para. 5(c), Exhibit B to the McClester affidavit, see n. 10, supra.

13. Para. 7, Exhibit B to the McClester affidavit, see n. 10, supra.

14. Exhibit L to the McClester affidavit.

(Georgia) were the legal owners, developers and sellers of the property in the Treasure Lake Subdivision.

This conclusion is fully consistent with the facts presented by the plaintiff. The most frequent reference to Westinghouse is contained in Count Two of the complaint in which the plaintiff, in substance, asserts merely that Westinghouse provided the loan for his purchase of the lots and in return was assigned the Articles of Agreement embodying the land sales contract. He expressly states that the defendants Treasure Lake and Great Northern sold him the lots; and that the Articles of Agreement clearly state that the sales agreement is "between Great Northern Development Co. . . . the owner and developer of Treasure Lake Georgia" and the plaintiff.[15] Other than as lender, Westinghouse is not alleged to have directly participated in any aspect of the sale transaction and is not charged in Count Two with any violation of the ILSFDA. As noted earlier, the only claimed violations of the ILSFDA are attributed by the plaintiff to the defendants Treasure Lake and Great Northern and their agents.

Although Count One generally charges the "defendants" with misrepresentations, it is apparent that, at the time of the sales, Westinghouse was involved only in financing the purchase of lots. There were no representations, accurate or otherwise, made by or on behalf of Westinghouse regarding the sale of the lots. The only statements attributable to Westinghouse pertained to the terms of financing the plaintiff's purchase.

At all times relevant to the transactions complained of, Westinghouse never supervised or engaged, directly or indirectly, in any advertising, development or sales activities in the Treasure Lake Subdivision. Nor did it act as an agent or representative of Great Northern or Treasure Lake (Georgia). There were no agents, employees or other representatives of Westinghouse at the site of the development. This minimal involvement of Westinghouse in the development of the subdivision falls far short of establishing any form of joint venture or common enterprise between it and Great Northern and Treasure Lake (Georgia). Compare Connor v. Great Western Savings and Loan Ass'n, 69 Cal.2d 850, 73 Cal.Rptr. 369, 447 P.2d 609 (1968).

The evidence clearly establishes that Westinghouse acted neither as a "developer" or an "agent" as defined by the ILSFDA. See Adema v. Great Northern Development Co., 374 F.Supp. 318 (N.D.Ga.1973). There is no genuine issue as to any material fact, and as a matter of law Westinghouse is not subject to civil liability under 15 U.S.C. § 1709. Judgment in its favor is therefore appropriate. Rule 56, Fed.R.Civ.P.

Accordingly, the motion for summary judgment by the defendant Westinghouse is sustained.

## MOTION FOR SUMMARY JUDGMENT BY TREASURE LAKE OF GEORGIA, INC. (DELAWARE)

The gist of this defendant's argument in support of its motion is that it did not come into existence as a legal entity until after the transactions complained of had been completed. This statement is supported by the Certificate of Incorporation appended to the motion issued to Treasure Lake (Delaware) by the Secretary of State of Delaware on November 29, 1972. The obvious implication is that the purchase of the lots involved different and separate parties, namely: Great Northern and Treasure Lake (Georgia). Thus, it is argued that this defendant could not have acted as a "developer" or "agent" in the transaction of purchase with the plaintiff. The correctness of this assertion depends on whether those parties were, in fact, separate from and different than Treasure Lake (Delaware).

To briefly review the facts in this context, the plaintiff alleges that the defendants generally and "Great Northern

---

15. See Plaintiff's Exhibits B–1 and B–2.

and Treasure Lake" specifically acted in violation of the ILSFDA in his purchase of two lots in the Treasure Lake Subdivision on April 11, 1971. The last incident mentioned in the complaint pertaining to these charges occurred on March 28, 1972.

The uncontroverted evidence, in affidavit form,[16] establishes that Treasure Lake (Delaware) is a wholly owned subsidiary of Westinghouse. Its existence evolved under the following circumstances. Westinghouse, as previously described, had agreed with Great Northern and Treasure Lake (Georgia), the owners and developers of the Treasure Lake Subdivision, to provide direct loans to purchasers of lots in that development. In March, 1972, Westinghouse also consented to provide substantial cash advances to Great Northern and Treasure Lake (Georgia) for construction improvements in the subdivision in return for a deed to secure debt covering the unsold portion of the development property.[17] Therefore, it henceforth assumed an additional role of construction lender to the developers.

By September, 1972, Westinghouse became aware of serious cash flow problems then experienced by Great Northern and Treasure Lake (Georgia) in the development of this and other subdivisions. Westinghouse consequently agreed on September 12, 1972 to provide the necessary additional and substantial financing, subject to the condition that it be given the power to thereafter direct and control the development activities in the subdivision. This was accomplished by irrevocable proxies given to Westinghouse as a creditor, by the fee simple owners of the development property and former developers, Great Northern and Treasure Lake (Georgia), and the controlling interests of those corporations.[18] Prior to that time, Westinghouse had no financial, proprie-

tory or control interest in Great Northern, Treasure Lake (Georgia) or the subdivision development itself, other than as a lender of funds for construction and lot purchases. There were no common directors, officers, agents, or employees.

In addition to continuing to make construction loans Westinghouse subsequently initiated certain changes in the operation or organization of these other corporations in the operation of the Treasure Lake Subdivision. As part of its effort to salvage this development, Westinghouse formed a wholly owned subsidiary, Treasure Lake (Delaware), which was incorporated in Delaware, as noted earlier, on November 29, 1972. On January 4, 1973, Treasure Lake (Delaware) purchased the Treasure Lake Subdivision from the original owners and developers, Great Northern and Treasure Lake (Georgia).[19] Treasure Lake (Delaware) has since proceeded with the planned development.

It is clear then that the plaintiff's dealings in the purchase of his two lots were necessarily with Great Northern and Treasure Lake (Georgia) only, notwithstanding his inclusion of Treasure Lake (Delaware) as a defendant in this action. Treasure Lake (Delaware) is, in fact and law, an entity completely separate and distinct from the corporations with whom the plaintiff transacted business. There is no corporate affiliation and no continuity of interests or control. Treasure Lake (Delaware) did not sell the plaintiff his lots, had no dealings with the plaintiff and therefore is not liable to the plaintiff under the ILSFDA.

Since there is no genuine issue as to any material fact, Treasure Lake (Delaware) is entitled to a judgment as a matter of law. Rule 56, Fed.R.Civ.P.

Likewise, the motion for summary judgment by Treasure Lake (Delaware) is sustained.

16. See n. 10, supra.

17. Exhibits F and G to the McClester affidavit, see n. 10, supra.

18. Exhibit H, I, J and K to the McClester affidavit, see n. 10, supra.

19. Exhibit M to the McClester affidavit, see n. 10, supra.

There being no just reason for delay, the clerk of this court is directed to enter judgment in favor of the defendants, Westinghouse Credit Corporation and Treasure Lake of Georgia, Inc. (Delaware), against the plaintiff.