Paul B. NARGIZ, Plaintiff below,
Appellant,

v.

HENLOPEN DEVELOPERS, a Delaware
limited partnership in which Max Am-
bach is the general partner, Defendant
below, Appellee.

Supreme Court of Delaware.

Submitted June 17, 1977.

Decided Sept. 29, 1977.

Robert L. Halbrook, and Dorothy Battle R. Robinson, of Wilson, Halbrook & Bayard, Georgetown, for plaintiff-appellant.

Richard P. Beck, of Morris, James, Hitchens & Williams, Wilmington, for defendant-appellee.

Before HERRMANN, C. J., McNEILLY, J., and BROWN, Vice Chancellor.

BROWN, Vice Chancellor.

This appeal is from a decision of the Superior Court which construed the application of the federal Interstate Land Sales Full Disclosure Act, 15 *U.S.C.* § 1701 et seq., to a contract for the sale of a high-rise condominium unit as authorized by the provisions of the Delaware Unit Property Act, 25 *Del.C.* § 2201 et seq. Plaintiff below appeals from the denial of his motion for summary judgment and from the granting of the defendant's cross-motion for summary judgment.

There is no dispute as to the material facts. On June 28, 1972 appellant entered into a written contract with the appellee, Henlopen Developers, for the purchase of a unit in the apartment condominium then under construction by Henlopen Developers on property located in Rehoboth Beach. Construction had commenced on this new high-rise condominium apartment building in May 1972 but no condominium units then existed. The contract was accepted by Henlopen Developers on July 19, 1972 and as a part thereof a down payment or earnest money deposit of $7,500 was made by the appellant. The contract itself contained no provision requiring Henlopen Developers to complete the building by any definite date. Nonetheless, the building was substantially completed by the fall of 1973 and the Declaration Plan required by the Delaware Unit Property Act, see 25 *Del.C.* §§ 2203, 2219, 2220, was recorded in November 1973. Of the 74 units conveyed to various purchasers prior to the filing of this suit, 71 were settled within two years from the date of the applicable sales contracts while the remaining three units were settled after the expiration of that period only at the request of the respective purchasers.

██ The Interstate Land Sales Full Disclosure Act was enacted by Congress as part of the Housing And Urban Development Act of 1968. It is directed at protecting purchasers from abuse by real estate developers through interstate commerce and the use of the mails in the promotion and sale of properties offered as part of a common promotional plan. Because of the frequent interstate aspects of their promotion and sale, the Act has special relevance to resort and recreational properties. See *Adema v. Great Northern Development Co.,* 374 F.Supp. 318 (N.D.Ga.1973); *Zachery v. Treasure Lake of Georgia, Inc.,* 374 F.Supp. 251 (N.D.Ga.1974); *Melhorn v. AMREP Corp.,* 373 F.Supp. 1378 (M.D.Pa.1974); *Hoffman v. Charnita, Inc.,* 58 F.R.D. 86 (M.D.Pa.1973). At the root of the present controversy is the following portion of § 1703 of the Act:

"(a) It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in the interstate commerce, or of the mails—

"(1) to sell or lease any lot in subdivision unless a statement of record

with respect to such lot is in effect in accordance with Section 1706 of the title and a printed property report, meeting the requirements of Section 1707 of this title, is furnished to the purchaser in advance of the signing of any contract; . . .

\* \* \* \* \* \*

"(b) Any contract or agreement for the purchasing or leasing of a lot in a subdivision covered by this chapter, where the property report has not been given to the purchaser in advance or at the time of his signing, shall be voidable at the option of the purchaser. \* \* \* "

In the present case, no such property report was given to the appellant prior to or at the time of his execution of the contract. By § 1719 of the federal Act, state courts are given concurrent jurisdiction with the federal courts over all suits brought to enforce any duty or liability created by the Act. Appellant elected not to go through with his contract to purchase the condominium unit and accordingly, not having been provided a property report, he brought this action in the Superior Court to avoid the agreement and recover his deposit.

In granting summary judgment for Henlopen Developers the Court below chose not to deal with the argument that the Interstate Land Sales Full Disclosure Act was not intended to apply to contracts for the sale or lease of condominium units. Rather it assumed that even if condominiums generally were within the contemplation of the Act, the sales transaction here was specifically exempted from the requirements of the Act by § 1702(a)(3). This provision specifically excludes from federal regulation

"(3) the sale or lease of any *improved land* on which there is a residential, commercial, or industrial building, or . . . the sale or lease of land under a contract obligating the seller to erect such a building thereon within a period of two years; . . . " (Emphasis added.)

In reaching this conclusion the Court below reasoned, in effect, that under the Delaware Unit Property Act a deed to a condominium unit must refer to both a recorded "declaration" and supportive "declaration plan" (or survey), 25 *Del.C.* § 2221, that the declaration plan must contain the verified certification of an architect or engineer showing "the property, the location of the building thereon, the building and the layout of the floors of the building, including the units and the common elements," 25 *Del.C.* § 2220, and that consequently, to be transferable by deed, a condominium unit must actually and physically exist before a proper declaration plan can be filed and, thus, before it can legally qualify as unit property or real estate. So analyzed, the Court below concluded that of necessity the subject matter of the contract between the appellant and Henlopen Developers was improved land rather than unimproved land. Since the sale of improved land is exempt from the application of the Act, it was concluded that appellant was not entitled to a property report prior to signing the contract and that consequently he had shown no basis to set aside the agreement and to recover his deposit. We cannot agree with the determination.

In so holding we take note of a lack of any decisional precedents on the precise point involved here despite the fact that the Interstate Land Sales Full Disclosure Act has been with us since 1969. We further note, however, that the Office of Interstate Land Sales Registration ("OILSR"), the federal body charged with administering the Act, has consistently taken the position (with some variation in degree)—first in the form of a position paper dated August 20, 1972 and later in the form of regulations issued in February 1974—that sales of condominium units are within the coverage of the Act. In commenting on this aspect of the definition of the term "lot" as used in the Act, the Administrator of OILSR stated as follows in the introduction to the agency's regulations:

"The application of the Act to condominiums has been consistent OILSR poli-

cy since the issue was first raised in 1969. The bases for this position are that condominiums carry the indicia of and in fact are real estate, whether or not the units therein have been constructed. A condominium is accordingly viewed by OILSR as equivalent to a subdivision, each unit being a lot." [1]

■ That this has become the accepted view, see 15A *Am.Jur.2d*, Condominiums § 20; Rohan and Reskin, Condominium Law and Practice (Matthew Bender 1976) § 18A.02; "Condominium Regulation: Beyond Regulation," 123 U. of Pa.L.Rev. 639, 660. It has been held that the general purpose of the Act was to prohibit and punish fraud in certain land development enterprises and consequently at the federal level, it has been said that the Act should be liberally interpreted to attain that end. It should be construed not technically, but flexibly to effectuate its remedial purposes. *McCown v. Heidler*, 527 F.2d 204 (10th Cir. 1975).

■ Therefore, to implement this national public policy of protecting the consumer we are constrained to accord a construction to the Interstate Land Sales Full Disclosure Act in keeping with the announced view of its administering federal agency. Accordingly, for the purpose of actions brought in the courts of this State under the authority of the Act and in reliance on its provisions, we hold that condominiums, or unit properties, as created pursuant to the Delaware Unit Property Act, are within the application of the federal statute. Since the Court below assumed this premise in proceeding to make its determination on the exemption contained in § 1702(a)(3) of the Act, we now turn to an examination of its rationale.

■ As noted previously, the Court below reasoned that since a condominium regime could not legally come into being under Delaware law until a declaration plan had been recorded, and since the declaration plan could not be recorded until the structure containing the unit properties was fully completed, the contract in issue here was necessarily one for the sale and purchase of improved land and thus was specifically exempted from the federal Act. As a practical matter, however, we feel that when parties bargain for the sale of a structural real estate unit which does not exist at the time, the purchase agreement cannot satisfy the statutory language which exempts "the sale . . . of any improved property on which there *is* a residential, commercial, or industrial building." Quite simply, the contract here was one for property to be improved. In fact, it was a contract for real estate to be later created. It was not a contract to purchase property on which a residential, commercial or industrial building existed at the time. Thus, even assuming without deciding that the Court below was correct in holding that a declaration plan cannot be filed under Delaware law until after the unit properties are constructed, it necessarily follows that the contract in question was not one for improved land within the meaning of 15 *U.S.C.* § 1702(a)(3), as the Court below found.

Henlopen Developers also relies on another argument presented to but not reached by the Court below. It points to the fact that although the contract did not expressly require it, the appellant's condominium unit was actually completed within two years from the date of the contract. If the purpose of the Interstate Land Sales Full Disclosure Act is to protect purchasers against fraudulent land development schemes and if the Act is satisfied that no fraud is likely if the sales agreement obligates the seller to erect a building on the land within two years, then Henlopen Developers fails to see where there can be any fraud present when the bargained-for construction is completed within two years. It suggests that to permit the appellant to escape from the contract without penalty under these circumstances is to interpret the Act so as to

1. See 38 FR 23866.

permit a purchaser to perpetrate a fraud upon a developer who has acted in good faith.

While this may appear to be true, the fact remains that the federal Act exists and, as we have held, applies to this transaction. To be exempt under § 1702(a)(3) from providing the property report and still avoid the purchaser's statutory right to withdraw, the seller must be obligated under the terms of the sales contract to erect a building within two years. The contract imposed no such obligation here, and the language of the statute makes it clear that no such obligation can be implied.

The decision of the Court below must be reversed and the cause remanded for such further proceedings as are consistent herewith.