468 So.2d 266 (1985)
APPALACHIAN, INC., Carrie Mountain, Inc., Appalachian Joint Venture, Commander, Legler, Werber, Dawes & Sadler, P.A., and Lawyers Professional Liability Insurance Company, Appellants,
v.
James D. OLSON, Appellee.
APPALACHIAN, INC., Appalachian Joint Venture, Carrie Mountain, Inc., Commander, Legler, Werber, Dawes & Sadler, P.A., and Lawyers Professional Liability Insurance Company, Appellants,
v.
E. Wayne Ackmann, et al., Appellees.
Nos. 84-57, 84-58.
District Court of Appeal of Florida, Second District.
March 1, 1985.
Rehearing Denied May 1, 1985.
*267 Eugene E. Stearns and Alan H. Fein of Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A., Miami, and James E. Aker of Icard, Merrill, Cullis, Timm & Furen, P.A., Sarasota, for appellants Appalachian, Inc., Carrie Mountain, Inc., and Appalachian Joint Venture.
Charles P. Schropp and Mark P. Buell of Shackleford, Farrior, Stallings & Evans, P.A., Tampa, for appellants Commander, Legler, Werber, Dawes & Sadler, P.A., and Lawyers Professional Liability Ins. Co.
Steven J. Chase and Terri Jayne Salt of Drymon, Bennett & Chase, P.A., Sarasota, for appellee Olson.
David J. Baron of Fergeson, Skipper & Shaw, Keyser, Baron & Tirabassi, P.A., and Johnson S. Savary of Kirk, Pinkerton, Savary, Carr & Strode, P.A., Sarasota, for appellees Ackmann, et al.
OTT, Judge.
This appeal is from a summary judgment wherein the trial court granted rescission of certain contracts to purchase condominium units. The trial court found that the federal Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq. (1982) ("the Act"), was applicable to appellants' condominium project. The trial court also found that equitable defenses raised by appellants were insufficient as a matter of law to bar summary judgment. We affirm.
The Act is aimed at protecting purchasers from abuse by real estate developers through interstate commerce and the use of the mails in the promotion and sale of properties offered as part of a common *268 promotional plan. The present case centers around section 1703(a)(1)(B) of the Act which prohibits a developer from selling or leasing any lot without first providing the buyer or lessee a written property report meeting certain requirements. If the developer fails to comply with this section, a purchaser or lessee may revoke any contract to purchase or lease within two years from the date of execution of said contract. 15 U.S.C. § 1703 (c). State courts have concurrent jurisdiction with federal courts over all suits brought under the Act. 15 U.S.C. § 1719.
Appellants are developers of a condominium project, along with other interested parties. The developers entered into contracts to sell individual condominium units under construction to appellees. The developers failed to supply the required property report. Appellees made earnest money deposits of varying amounts as provided in the contracts. The contracts contained no provision requiring the developers to complete construction by any definite date. The units were completed, and appellees received notification that appellants were ready to close well within two years of the execution of the contracts. Appellees thereupon elected to revoke their contracts and filed suit to enforce their rights under the Act, which resulted in the aforementioned summary judgment.
We first discuss the threshold issue of whether the Act applies to the sale of condominiums. We hold that it does. This issue was addressed in Nargiz v. Henlopen Developers, 380 A.2d 1361 (Del. 1977). Although recognizing a lack of court decisions addressing this point, the Supreme Court of Delaware noted that the federal body in charge of administering the Act, the Office of Interstate Land Sales Registration ("OILSR"), had consistently applied the Act to condominiums. Id. at 1363. See also 38 C.F.R. 170 (1973). Section 1702(a)(3) of the Act was amended in 1973 to add specific reference to condominiums. Our sister court, without specifically addressing the issue, has apparently accepted the proposition that the Act covers the sale of condominiums. See Dorchester Development, Inc. v. Burk, 439 So.2d 1032 (Fla. 3d DCA 1983). Appellants have called to our attention the recent case of Winter v. Hollingsworth Properties, Inc., 587 F. Supp. 1289 (S.D.Fla. 1984), which holds that the Act does not apply to the sale or lease of condominiums. We are unpersuaded by this decision.
We next address the question of whether the sales transaction here is for the sale of improved land. If it is, the transaction is exempted from the requirements of the Act by section 1702(a)(2), which excludes "the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building... ." The contracts between the developers and appellees obligate appellants to convey a completed condominium unit. Also, section 718.104(4)(e), Florida Statutes (1983), requires a condominium to be substantially completed prior to conveyance. Notwithstanding, we hold that the contracts here for uncompleted units do not constitute contracts for the sale of improved land. The fact that at a future closing the developers convey a then completed building or unit does not alter our opinion for the reasons hereafter expressed.
For purposes of the Act, a sale occurs when "a purchaser has entered into any obligation or agreement for consideration...." Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036 (10th Cir.1980). See also 44 C.F.R. § 24011 (1979). Hence, sale occurs when an agreement or contract is executed and not when the completed condominium unit is conveyed. A holding that a sale occurs only upon the conveyance of the completed unit would result in the Act not applying to condominium sales in Florida. Such a result is contrary to the interpretation and application of the Act by OILSR for more than a decade.
In Nargiz, the Supreme Court of Delaware was faced with arguments similar to those urged by appellants in the present case. Our holding is in accord with that of the Delaware court.
*269 The developers could have utilized a second exemption found in section 1702(a)(2) which excludes from the Act "the sale or lease of land under a contract obligating the seller to erect [a residential, commercial, condominium, or industrial building] within a period of two years." The developers failed to include any such provision in their contracts and have not asserted any entitlement to this exemption.
The developers pled the equitable affirmative defenses of estoppel, laches, and unclean hands in response to the action for rescission. The trial court ruled that these defenses, if proven, would not bar appellees' rights under the Act. To support these affirmative defenses, the developers asserted that each appellee had represented to the developers that he or she would purchase a unit and that in reliance thereon the developers removed each contracted unit from the market. Later, when the developers were informed that the appellees intended to rescind based on the Act, market demand had diminished and it was difficult to remarket the units. The developers further alleged that the appellees were not damaged by the failure to receive a property report. Finally, the developers alleged that many appellees invested in the units for speculation and failed to close only because of the downturn in the real estate market. Some appellees decided not to close soon after signing contracts for purchase but failed to inform the developers until notified of the scheduled closing date.
The elements of estoppel are (1) a representation as to a material fact that is contrary to a later-asserted position; (2) reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon. See, e.g., State Department of Revenue v. Anderson, 403 So.2d 397, 400 (Fla. 1981). The developers here seek to rely on contracts which fail to inform appellees of their right to rescind under the Act as required by section 1703(c) to estop the appellees to assert that very right. The doctrine of estoppel is a creature of equity and is governed by equitable principles. It is applied against wrongdoers and not against the victims of wrong. See generally 28 Am.Jur.2d Estoppel and Waiver § 28 (1966). We hold that the allegations herein are insufficient to bring the developers within the doctrine of estoppel.
The appellees filed suit before the expiration of the statute of limitations. Laches may be applied before the statute of limitations expires only where strong equities appear. Smith v. Branch, 391 So.2d 797 (Fla. 2d DCA 1980). Laches is based upon an unreasonable delay, Bethea v. Langford, 45 So.2d 496 (Fla. 1949), in asserting a known right which causes undue prejudice to the party against whom the claim is asserted. Van Meter v. Kelsey, 91 So.2d 327 (Fla. 1956). The developers failed to allege that the appellees unreasonably delayed filing suit once they gained knowledge of their right to rescind under the Act. Cf. Law v. Royal Palm Beach Colony, Inc., 578 F.2d 98 (5th Cir.1978) (plaintiffs entitled to summary judgment where developer failed to allege or prove prejudice necessary to invoke laches doctrine.)
Finally, we hold that the trial court did not abuse its discretion in failing to apply the doctrine of clean hands. See Roberts v. Roberts, 84 So.2d 717 (Fla. 1956).
We feel constrained to note that Florida has enacted a comprehensive and detailed condominium act aimed at full disclosure which serves to protect unwary purchasers from abusive practices of condominium developers. See Ch. 718, Fla. Stat. (1983). This appears to be the trend in other states as well. See generally 15A Am.Jur.2d Condominiums § 22 (1976). In light of this, we question whether the federal government needs to police the sale of condominiums. However, we have no choice but to enforce the remedies afforded to purchasers by the Act.
Appellees' points on cross-appeal are without merit.
*270 The decision of the trial court is AFFIRMED.
RYDER, C.J., and GRIMES, J., concur.