Bruce E. WINTER, Michael Arbetter and Gary Stein, general partners of and doing business as Americor Realty Associates, Plaintiffs-Appellants,

v.

HOLLINGSWORTH PROPERTIES, INC., et al., Defendants-Appellees.

No. 84–5476.

United States Court of Appeals,
Eleventh Circuit.

Dec. 11, 1985.

Payton & Rachlin, P.A., Richard S. Rachlin, Andrew J. Markus, Miami, Fla., for plaintiffs-appellants.

Alan H. Fein, Miami, Fla., for amicus Appalachia, Inc., Appalachian Joint Venture & Carrie Mountain, Inc.

Bruce Forrest, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for amicus Dept. of Housing & Urban Development.

Crary, Buchanan, Bowdish & Bovie, John Cordes, Stuart, Fla., for defendants-appellees.

Kirk, Pinkerton, Savary, Carr & Strode, P.A., Johnson S. Savary, Sarasota, Fla., for amicus Ackerman, et al. on behalf of APT.

Before TJOFLAT and HENDERSON, Circuit Judges, and NICHOLS[*], Senior Circuit Judge.

TJOFLAT, Circuit Judge:

This suit was brought by the buyer of a condominium unit seeking rescission of its contract to purchase the unit and the return of its deposit pursuant to the Interstate Land Sales Full Disclosure Act (ILSFDA), 15 U.S.C. §§ 1701–1720 (1982). The district court granted the seller's motion for final summary judgment, concluding that the ILSFDA is not applicable to the sale of condominiums or, if the Act does apply, this particular sale was exempt because the buyer was in the land sales business. We reverse.

[*] Honorable Philip Nichols, Jr., U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. 15 U.S.C. § 1703(a)(1)(B) (1982) provides that:
(a) It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails—
(1) with respect to the sale or lease of any lot not exempt under section 1702 of this title—
. . . .
(B) to sell or lease any lot unless a printed property report, meeting the requirements of section 1707 of this title, has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser or lessee.

I.

On July 8, 1981, Americor Realty Associates, a Florida general partnership, and Bruce E. Winter, Michael Arbetter, and Gary Stein, the general partners of Americor (buyer), entered into a contract to purchase a condominium unit from Hollingsworth Partnership (seller), a Florida general partnership. Construction of the condominim had not been completed at the time the contract was executed, and the contract did not obligate the seller to complete the building at any definite time. The seller did not provide the buyer with a printed property report before the contract was executed as required by the Interstate Land Sales Full Disclosure Act. 15 U.S.C. § 1703(a)(1)(B) (1982).[1]

The buyer paid ten percent of the total purchase price to the seller as a deposit at the time the contract was made. It was required to pay an additional deposit of five percent when the condominium building was "topped out" and the balance of the purchase price at closing. The buyer did not pay the additional five percent as required and failed to cure the default after being given notice and an opportunity to cure. On October 25, 1982, the seller notified the buyer that its deposit was forfeited.

On April 25, 1983, the buyer sought to exercise its right to revoke the contract and obtain the return of its deposit pursuant to the ILSFDA.[2] The seller denied the appli-

The seller admitted that it used the mails and instruments of transportation or communication in interstate commerce in connection with the sale of the condominium in question.

2. 15 U.S.C. § 1703(c) (1982) provides that:
In the case of any contract or agreement for the sale or lease of a lot for which a property report is required by this chapter and the property report has not been given to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement may be revoked at the option of the purchaser or lessee within two years from the date of such signing, and such contract or agreement shall clearly provide this right.
The purchaser, upon complying with certain conditions, is entitled to the return of all money

cability of the ILSFDA to the agreement in question and refused the request for revocation. The buyer filed a complaint in the district court on May 13, 1983, seeking revocation of the contract, costs, and attorneys' fees.[3] The seller's answer admitted that it had not complied with the ILSFDA, but denied that the statute was applicable to this transaction.

On August 25, 1983, the buyer moved the court for summary judgment on the issue of liability. The court denied this motion on October 17. On October 20, the seller moved the court for summary judgment. The court heard argument from counsel on January 27, 1984, and granted the motion on May 18, 587 F.Supp. 1289. Final summary judgment for the seller was entered on May 24. The court held that the ILSFDA is not applicable to the sale of a condominium unit because a condominium is not a "lot" within the meaning of the Act.[4] Alternatively, the court stated that, if the ILSFDA did cover the sale of condominiums, the transaction in question would still be exempt from the Act because the buyer was engaged in the business of land sales.[5] The buyer now appeals, claiming that the district court erred in its determinations that the ILSFDA did not apply to

condominium sales and that the buyer was in the land sales business.

## II.

To determine whether the ILSFDA applies to the sale of a condominium[6] we must construe two provisions of the Act. Section 1703(a) makes it unlawful to sell or lease "any lot not exempt under section 1702" unless the seller complies with the provisions of the Act, including the property report requirement. *See supra* note 1. Section 1702(a)(2) provides that the Act shall not apply to "the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years."

## A.

The ILSFDA was originally enacted as part of the Housing and Urban Development Act of 1968. The bulk of this Act was directed toward making available suitable housing for low income level families through a series of interest subsidies, insurance provisions, loans, grants, and urban renewal provisions. In contrast, the

---

paid to the seller when the contract is revoked pursuant to section 1703(c). 15 U.S.C. § 1703(e) (1982).

**3.** 15 U.S.C. § 1709 (1982) specifies that a purchaser may bring an action at law or in equity to enforce the provisions of section 1703 and includes costs and reasonable attorneys' fees in the amount recoverable. "The district courts of the United States ... have jurisdiction of offenses and violations" under the ILSFDA. 15 U.S.C. § 1719 (1982).

**4.** The provisions of 15 U.S.C. § 1703(a)(1) (1982) apply to the "sale or lease of any *lot* not exempt under section 1702." (emphasis added). The Act further provides that it is unlawful to "sell or lease any *lot* unless a printed property report" has been furnished to the purchaser. 15 U.S.C. § 1703(a)(1)(B) (1982) (emphasis added).

**5.** The district court referred to the regulations promulgated pursuant to the ILSFDA which provide an exemption for transactions involving the "sale of lots to a person who is engaged in a bona fide land sales business." 24 C.F.R. § 1710.14(a)(3) (1985). The Secretary of Hous-

ing and Urban Development is granted the authority to exempt from the ILSFDA, by regulation, certain sales if he finds that the enforcement of the Act "is not necessary in the public interest ... by reason of the small amount involved or the limited character of the public offering." 15 U.S.C. § 1702(c) (1982). The statute contains a similar provision, exempting from the Act "the sale or lease of lots to any person who acquires such lots for the purpose of engaging in the business of constructing residential, commercial, or industrial buildings or for the purpose of resale or lease of such lots to persons engaged in such business." 15 U.S.C. § 1702(a)(7) (1982); *see also* 24 C.F.R. § 1710.-5(g) (1985).

**6.** The term "condominium" refers to a form of real estate ownership, rather than to any particular type of building. *See* 38 Fed.Reg. 23, 866 (1973). For example, the condominium form of ownership has been used frequently in the sale and development of private campgrounds, involving little more than raw land. *See id.*

ILSFDA is an antifraud statute utilizing disclosure as its primary tool, much like the securities laws. It is not disputed that Congress, in passing the statute, desired to protect purchasers from unscrupulous sales of undeveloped home sites, frequently involving out-of-state sales of land purportedly suitable for development but actually under water or useful only for grazing. The seller, and the district court, therefore conclude that Congress was only concerned with, and the ILSFDA only applies to, the sale of raw land. We do not agree that the scope of the statute is so limited.

Congress did not draft the statute to apply solely to raw land, but made it applicable to the sale or lease of lots. The legislative history of the Act indicates that Congress was concerned with the sale of fairly large numbers of undeveloped lots pursuant to a common promotional plan. Conf.Rep. No. 1785, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.Code Cong. & Ad.News 3053, 3066. The legislative history also employs the terms "land" and "real estate." *Id.* Although Congress may have been primarily concerned with the sale of raw land, it struck a balance by making the statute applicable to *all* lots and providing an exemption, not for all improved land, but for improved land on which a residential, commercial, condominium, or industrial building exists or where the contract of sale obligates the seller to erect such a structure within two years.[7]

The key term that we must construe is "lot" because the sale or lease of any non-exempt lot triggers the provisions of the Act. Lot is not defined anywhere in the ILSFDA.[8] The Secretary of Housing and Urban Development (HUD) has defined lot, as part of a rule making proceeding completed in 1973, as "any portion, piece, division, unit, or undivided interest in land ... if the interest includes the right to the exclusive use of a specific portion of the land." 24 C.F.R. § 1710.1 (1985). During the course of this rule making proceeding, builders expressed concern over the inclusion of condominiums within the scope of the ILSFDA. The Secretary responded to this concern in detail:

The application of the Act to condominiums has been consistent OILSR [9] policy since the issue was first raised in 1969. The bases for this position are that condominiums carry the indicia of and in fact are real estate, whether or not the units therein have been constructed. A condominium is accordingly viewed by OILSR as equivalent to a subdivision, each unit being a lot. Adverse comment, particularly from builders, asserts that condominiums are equivalent to houses and the sale of houses was not intended to be covered by the Act. However, the right to condominium space is a form of ownership, not a structural description. This condominium concept is employed as an ownership form for completely horizontal developments and even for campgrounds. Congress recognized the need to exempt professional builders from the Act and provided an appropriate exemption (15 U.S.C. 1702[(a)(2)]). For a condominium unit sale to be exempted from the Act, it must accordingly qualify for

---

7. As originally enacted, the exemption covered improved land on which there is a residential, commercial, or industrial building or where the seller is obligated to construct such a building within two years. A 1978 amendment inserted the word condominium after commercial. *See* Housing and Community Development Amendments of 1978, Pub.L. No. 95–557, § 907(a)(1), 92 Stat. 2080, 2127. The importance of this amendment is discussed *infra*.

8. The Act contains exemptions for the sale of lots in a subdivision of limited size. *E.g.,* 15 U.S.C. § 1702(a)(1) (1982) (sale of lots in subdivision containing less than 25 lots); 15 U.S.C. § 1702(b)(1) (1982) (sale of lots in subdivision

containing less than 100 lots); *see also* 15 U.S.C. § 1702(b)(2) (1982) (sale of lots in subdivision where not more than 12 lots sold in a year). The term subdivision is defined in the Act as "any land which ... is divided or is proposed to be divided into lots, whether contiguous or not, for the purpose of sale or lease as part of a common promotional plan." 15 U.S.C. § 1701(3) (1982). It is necessary to construe the term "lots" before any meaning can be given to the definition of a subdivision.

9. The Office of Interstate Land Sales Registration (OILSR) is the organization designated by the Secretary of HUD to administer the Act. *See* 15 U.S.C. § 1715(a) (1982).

exemption; i.e., either it must be completed before it is sold, or it must be sold under a contract obligating the seller to erect the unit within two years from the date the purchaser signs the contract of sale.

38 Fed.Reg. 23,866 (1973). HUD reiterated its position that the ILSFDA applies to the sale of condominiums in 1974, *see* 39 Fed. Reg. 7824 (1974), and in 1979, *see* 44 Fed. Reg. 24,012 (1979).

■ The courts afford great deference to the interpretation of a federal statute by the agency charged with administration of the statutory scheme. *EPA v. National Crushed Stone Ass'n*, 449 U.S. 64, 83, 101 S.Ct. 295, 307, 66 L.Ed.2d 268 (1980). The agency's interpretation need not be the only reasonable one or even the one that we would reach had we decided the question initially; if the agency's interpretation is reasonable, it will be upheld. *American Paper Institute v. American Electric Power Service Corp.*, 461 U.S. 402, 422–23, 103 S.Ct. 1921, 1933, 76 L.Ed.2d 22 (1983). We find that HUD's inclusion of condominiums within the ILSFDA is a reasonable interpretation of Congress' original intent in enacting the statute and the only defensible interpretation given subsequent events.[10]

The ILSFDA was intended to curb abuses accompanying interstate land sales. The Act accomplishes that goal by including within it all sales of lots and then exempting a number of transactions, including sales of fully improved property.

It is reasonable to conclude, as HUD did, that the term "lot" was used to refer generally to interests in realty. The legislative history supports this construction, employing the terms "lot," "land," and "real estate" in discussing the Act. This construction is also reasonable in terms of the purpose of the statute. A fraudulent out-of-state sale of land is not rendered any less fraudulent if the condominium form of ownership is utilized.[11]

As previously described, it is clear that HUD has considered condominium sales within the scope of the ILSFDA since its formal pronouncement in 1973, in which it maintained that this construction had been followed since 1969. In 1978, Congress was considering amendments to the ILSFDA. At the time, the Act exempted sales of improved land on which there is a residential, commercial, or industrial building or where the seller is obligated to complete such a structure within two years. Congress amended this provision explicitly to exempt condominium sales under the same circumstances, *see supra* note 7, noting that the HUD regulations did not provide such an exemption. *See* S.Rep. No. 871, 95th Cong., 2d Sess. (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 4773, 4868. Congress was informed by a HUD representative that the amendment would have no effect on the agency's interpretation of the statute.

The obvious conclusion to be drawn from this history is that Congress was aware of

**10.** Other courts that have considered this issue have agreed that HUD's interpretation is a reasonable one. *E.g., Schatz v. Jockey Club Phase III, Ltd.*, 604 F.Supp. 537, 540–41 (S.D.Fla.1985); *Nargiz v. Henlopen Developers*, 380 A.2d 1361, 1364 (Del.1977); *Appalachian, Inc. v. Olson*, 468 So.2d 266, 268 (Fla.Dist.Ct.App.1985). In *Eaton v. Dorchester Development, Inc.*, 692 F.2d 727 (11th Cir.1982), we reversed the district court's dismissal of a complaint for lack of subject matter jurisdiction. The complaint alleged a violation of, and based jurisdiction on, the ILSFDA. The defendant argued that because its development contained only 86 condominium units, the sale in question was exempt from the ILSFDA pursuant to 15 U.S.C. § 1702(b)(1) (1982) (sale of lots in subdivision containing less than one hundred lots are exempt). The

plaintiffs responded that the development encompassed a larger subdivision being marketed pursuant to a common promotional plan and moved to amend their complaint to state explicitly the factual basis for jurisdiction. Before the plaintiffs could conduct discovery to attempt to show that a larger subdivision was involved, the district court dismissed the suit for lack of subject matter jurisdiction. We held that dismissal was premature and that the plaintiffs had to be given an opportunity to establish facts sufficient to support jurisdiction. It was assumed, without discussion, that the Act would apply to condominium sales, if the one hundred lot exemption was not available.

**11.** *See supra* note 6.

HUD's interpretation that the Act covered condominium sales and acted to exempt such sales where the building is existing or must, by contract, be completed within two years. If the ILSFDA did not include the sale of condominiums within its scope, it would be senseless to provide for the exclusion of such sales under certain prescribed conditions. We therefore conclude that Congress was aware of, and approved of,[12] HUD's construction of the Act [13] and hold that the ILSFDA is applicable to the sale of condominiums.

### B.

The seller contends that, if condominium sales do come within the ILSFDA, the district court's grant of summary judgment in its favor can still be upheld because the sale in question was exempt as "the sale ... of any improved land on which there is a ... condominium ... building." 15 U.S.C. § 1702(a)(2) (1982). The seller argues that there can be no "sale" until title to the unit is transferred. Because the buyer was not obligated to accept title until

the unit was completed, the seller maintains that, at the time of the sale, the transaction would involve improved land on which there *is* a condominium.

■ We are unable to agree with the seller's contentions. For the purposes of the ILSFDA the "sale" takes place at the time the purchaser signs the contract and incurs an obligation. *See Law v. Royal Palm Beach Colony, Inc.,* 578 F.2d 98, 100 (5th Cir.1978); [14] *Aldrich v. McCulloch Properties, Inc.,* 627 F.2d 1036, 1043–44 (10th Cir.1980); *see also* 24 C.F.R. § 1710.1 (1985). This is a necessary result to ensure that the Act's purpose is fulfilled; the buyer must receive the information necessary to make his decision prior to the purchase commitment. *See Law v. Royal Palm Beach Colony,* 578 F.2d at 99. Real estate contracts frequently call for a long period of installment payments with title not being transferred until the entire amount is paid. It would frustrate the intent of the Act to say that no sale takes place until title is transferred.

**12.** Courts ordinarily do not attach much significance to Congress' acquiescence in an agency's interpretation of a statute because "[n]on-action by Congress is not often a useful guide." *Bob Jones University v. United States,* 461 U.S. 574, 600, 103 S.Ct. 2017, 2033, 76 L.Ed.2d 157 (1983); *see Aaron v. SEC,* 446 U.S. 680, 694 n. 11, 100 S.Ct. 1945, 1954 n. 11, 64 L.Ed.2d 611 (1980). With regard to the ILSFDA, however, Congress did more than acquiesce in HUD's longstanding interpretation; Congress took specific action in 1978 to exempt the sale of some condominiums from the Act's scope. *See supra* note 7. The implication to be drawn from this action is that, absent such an exemption, the ILSFDA must apply to the sale of condominiums.

**13.** The seller argues the significance of two pieces of legislative history subsequent to 1978: (1) a 1979 House Report indicating that legislation with regard to condominium development and conversions was not needed because of adequate state and local safeguards; and (2) a 1980 Senate Report recommending legislation with regard to conversions of rental housing into condominiums but advising that additional legislation covering new condominiums was unnecessary, again because of adequate state and local protections. The seller contends that, because this history declined to recommend a comprehensive federal disclosure and protec-

tion scheme for all condominium sales and noted the adequacy of state and local regulation, it provides evidence that Congress did not believe the ILSFDA was applicable to condominium sales. We are not persuaded for several reasons. First, this legislative history is not connected to the ILSFDA, but instead is primarily aimed at the problem of rental housing conversions. Second, the history discusses the sale of existing condominiums as well as the development of new ones. Most of these transactions would be exempt from the ILSFDA, and the discussion of adequate state and local safeguards was therefore appropriate. Finally, the scope of the ILSFDA's coverage of condominiums is very narrow, applying only when sales exceed specified numbers of lots, *see supra* note 8, not applying to sales that are solely intrastate, *see* 15 U.S.C. § 1702(b)(7) (1982), and exempting sales to persons in the land sales or construction businesses, *see supra* note 5. Congress' refusal to enact a more wide-ranging federal condominium statute does not mean that it intended to cast doubt on HUD's interpretation of the ILSFDA.

**14.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

The language of the statute also focuses on the time the purchaser signs the contract. The property report must be delivered in advance of this time, 15 U.S.C. § 1703(a)(1)(B) (1982), an initial period of revocation is granted the purchaser following this event, 15 U.S.C. § 1703(b) (1982), and the time to revoke a contract for failure to deliver a property report runs from that time. 15 U.S.C. § 1703(c) (1982). In addition, the exemption in question applies to improved land on which there is a building or where a contract requires the seller to construct such a building within two years, again focusing on the time of contracting.[15]

■ We decline to depart from the plain language of the statutory exemption. If at the time the purchaser signs the contract there exists a condominium building or the seller is obligated to erect such a building within two years, the sale is exempt from the Act. If, as in this case, no building exists at the time of contracting and the contract does not contain a binding obligation to complete one within two years, compliance with the statute is required.

### III.

■ The district court determined that, if the ILSFDA applies to the sale of a condominium, this particular transaction was exempt because the buyer was engaged in a bona fide land sales business. *See supra* note 5. The seller never raised this issue before the district court and has not argued the point on appeal as a ground to affirm the district court's grant of summary judgment. The district court's conclusion appears to have been largely premised on the name of the buyer's general partnership, Americor Realty Associates. No other facts appear in the district court's order to support the conclusion that the buyer was in the land sales business. Our review of the record discloses no additional facts that could support such a finding. Accordingly, the court erred in determining that there was no genuine issue as to whether the buyer was in the land sales business,[16] clearly a material fact in this case, and that the seller was entitled to judgment as a matter of law. *See Poller v. Columbia Broadcasting System*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); Fed.R.Civ.P. 56(c).

### IV.

For the foregoing reasons, the district court's order granting the seller's motion for summary judgment is REVERSED and the case is REMANDED for proceedings consistent with this opinion.

REVERSED and REMANDED.

■■■■■■■

15. The provisions of the ILSFDA frequently apply to the sale or lease of a lot. *E.g.*, 15 U.S.C. § 1703(a)(1)(B) (1982). Passage of title is irrelevant as far as a lease is concerned, again evidencing that the time of contracting is the important factor.

16. HUD guidelines elaborate on the exemption at issue:

Lots Sold to Developers—The sale or lease of lots to a person who is engaged in a bona fide land sales business is exempt. For a transaction to qualify for this exemption, the purchaser must be a person who plans to subsequently sell or lease the lot(s) in the normal course of business. The term 'business' refers to an activity of some continuity, regularity and permanency or means of livelihood. The sale or lease of lots to an individual who is buying the property for investment (to be sold at some unforeseeable time in the future) would not be exempt under this provision. 44 Fed.Reg. 24,018 (1979). Genuine issues exist as to the buyer's plans for the condominium, its investment intent, and whether it was involved in a land sales "business," meaning a continuous, regular, permanent endeavor or a means of livelihood. The record does not contain any evidence upon which to base a finding on these matters.