507 So.2d 150 (1987)
APPALACHIAN, INC., Carrie Mountain, Inc., and Appalachian Joint Venture, and Commander Legler, Werber, Dawes & Sadler, P.A., and Lawyers Professional Liability Insurance Company, Appellants,
v.
E. Wayne ACKMANN, Roland V. Askins, Robert D. Britigan and Dorothy R. Britigin, Husband and Wife, Charles Desenberg, Trustee, Alberto Esguerra, Aaron Fleck and Barbara Fleck, Husband and Wife, Barry W. Karas, Nicholas Litchin, Judson D. Moulton, J. Brian Murphy, M.D., Horace Norrell, M.D., Rose Orbits, John B. Ross and Ann T. Ross, Husband and Wife, Arthur N. Ryan and Elizabeth K. Ryan, Husband and Wife, Jack B. Sewell, M.D., Ralph A. Vitale, Daniel Weber and Shirley Weber, Husband and Wife, Miriam O. Weiss, and Larry Byrd, et al., Appellees.
No. 85-2984.
District Court of Appeal of Florida, Second District.
May 8, 1987.
*151 Alan H. Fein of Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, Miami, for appellants Appalachian, Inc., Carrie Mountain, Inc., and Appalachian Joint Venture.
Charles P. Schropp and Mark P. Buell of Shackleford, Farrior, Stallings and Evans, Tampa, for appellants Commander, Legler, Werber, Dawes & Sadler, P.A., and Lawyers Professional Liability Ins. Co.
Julian Clarkson of Holland & Knight, Tallahassee, and Johnson S. Savary of Kirk, Pinkerton, Savary, Carr & Strode, Sarasota, for appellees Ackmann, et al.
Robert C. Widman of Nelson, Hesse, Cyril, Smith, Widman & Herb, Sarasota, for appellee Byrd.
FRANK, Judge.
The appellants, collectively referred to as "Appalachian," were the developers of a condominium project in Sarasota County. The appellees contracted to buy individual units, and are identified below as the "purchasers."
In the course of vending the condominium units, Appalachian failed to comply with the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701, et seq. (ILSA). Section 1703(a)(1)(B) of that statute permits a buyer or lessee to revoke a contract to purchase or to lease property in the circumstance where the vendor or lessor is deficient in providing such customer with a written report meeting the requirements contained within that section. A developer's noncompliance with section 1703(a)(1)(B) permits the revocation of a purchase or lease contract within two years from the date of its execution. The purchasers unsuccessfully invoked section 1703(a)(1)(B) and in 1982, an action was initiated in a multi-count complaint. Title 15 U.S.C. § 1719 creates concurrent jurisdiction to enforce rights conferred by section 1703. Count I, alone, was predicated on ILSA. The remaining six counts were grounded upon Florida law, found in chapter 718, Florida Statutes (1981), regulating the condominium industry. The trial court dismissed several of the state law based counts but ultimately granted the purchasers a summary judgment on count I. Appalachian appealed from the summary judgment and we affirmed. Appalachian, Inc. v. Olson, 468 So.2d 266 (Fla. 2d DCA 1985) (Appalachian I).[1] The purchasers' contentions urged in a cross-appeal were found meritless. Id. The events which followed generated the current dispute.
In May and August of 1985, the trial court conducted proceedings involving the purchasers' claims of entitlement to an attorney's fee permitted by ILSA to be assessed against Appalachian. See 15 U.S.C. § 1709. In November of 1985, the trial court entered a final judgment awarding $520,400 in attorney's fees to the purchasers' attorneys who undertook their representation *152 pursuant to contingent fee agreements. Appalachian has appealed from that judgment challenging its correctness on four grounds, i.e., the fee award encompassed matters beyond the ILSA claim, the evidence was inadequate to permit a determination of actual hours expended in pursuing the ILSA count, the hours found compensable by the trial court are not supported by evidence that such time expenditure was reasonable, and the court erred in its enhancement of the fee.
Our supreme court has decreed that this case, as well as all others of its kind, is to be governed by Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).[2]Rowe formulated and announced criteria or principles which are to be followed when a prevailing party is either a statutory or contractual beneficiary of entitlement to an attorney's fee. Thus, in reaching a reasonable fee to be paid by the unsuccessful party, our trial courts have been instructed to determine a reasonable hourly rate to be multiplied by the hours reasonably expended in the representation of the prevailing party. Once those determinations are accomplished, the resultant product is denominated the "lodestar." In the context of a contingent fee arrangement, the lodestar may be enlarged by a multiplier ranging from a factor of 1.5 to 3. The degree of enhancement of the lodestar is measured by one of three considerations:
1) if success was more likely than not at the outset of the litigation, the lodestar may be enlarged by 1.5;
2) if the likelihood of success was counterbalanced by the likelihood of failure, the multiplier should be at 2;
3) if success was unlikely at the moment the litigation was initiated, the lodestar may be enhanced by a multiplier of 2.5 to 3.
We are constrained to comment at the outset that we cannot ignore the fact that Appalachian's liability under ILSA was determined on a motion for summary judgment. Although we are not purporting to assess the fee question in the manner of a trial court, and though it may seem an unnecessary statement of the obvious, we are mindful that the successful litigation of an issue through the award of a summary judgment normally requires vastly less time than does a full-blown trial. Hence, we are initially impressed with the question of whether the expended hours found reasonable by the trial court are justified. On the other hand, we are sensitive to the reality that the ILSA claim was not surrounded by an abundance of reported decisions passing upon its applicability to a setting such as the one presented by the purchasers. It is apparent from our opinion in Appalachian I that at the outset of the litigation there existed a paucity of decisional authority bearing upon whether the word "lot" as it is used in ILSA was intended to encompass a condominium. The authority which was available, however, expressed divergent judicial perceptions of ILSA's applicability to the sale or lease of condominiums. 468 So.2d at 268. Thus, it cannot be said that the purchasers and their attorneys entered the battle with a high degree of certitude as to the outcome. We note these views because of their essential effect upon two aspects of Rowe, i.e., the hours expended and enhancement of the lodestar.
Within the confines of the foregoing observations and the principles enunciated in Rowe, we have canvassed the record and have analyzed the evidence tendered to the trial court. We find no reversible error in the trial court's ultimate judgment.
The purchasers claimed the expenditure of 2,380.8 hours. The hourly rate ranged from $30 per hour for law clerks to $165 per hour for lead counsel. In seeking to sustain the validity of the expended hours and the hourly rate, the purchasers *153 offered the testimony of six witnesses, three of whom were deemed experts and three of whom were involved in the representation of the purchasers. One of the three expert witnesses testified that he found the purchasers' attorneys' fees too low considering the nature of the work that was performed. It was his view that under the contingent fee arrangements, a fee of $1,100,000 would be reasonable, that amount representing approximately 40% of the $3,000,000 judgment.[3] Another expert testified based upon his experience in litigating matters originating under ILSA that the purchasers' attorneys would be reasonably compensated by an award in the range of $500,000 to $600,000. In this instance, however, the expert did not undertake a review of the hours logged by the purchasers' attorneys. Rather, he assumed the propriety of the requested fee in the amount of $260,000 and found a multiplier of 2 to be justified based upon the probabilities of success; he deemed it a 50-50 call. The purchasers' third expert witness reviewed the files, the judgment, the briefs filed with this court in Appalachian I and various pleadings. He fixed a reasonable hourly rate at between $150 and $200 per hour. Based upon those figures and the representation to him by the purchasers' attorneys that they consumed between 2,300 and 2,500 hours in the litigation, he testified to a fee of $965,000. That amount resulted from a multiplier of 2.75 and a $15,000 fee paid to another firm for appellate work. Finally, the purchasers' primary attorney testified to his role and activities in pursuing the ILSA claim.
The sole witness furnished the trial court on behalf of Appalachian did little to aid the trial court in its resolution of the fee question. He testified from a review of the pleadings before the trial court, the briefs filed in Appalachian I and a summary of time records prepared by Appalachian's attorneys that the achievement of a summary judgment should not have required more than 300 to 400 hours. In any case, this witness' method for computing a reasonable fee consisted entirely of the highest hourly rate, i.e., $165 charged by the purchasers' lead counsel, multiplied by 450 hours, or, a lodestar of $74,260. The multiplier found appropriate by this witness was 1.5 for a total Rowe computed fee of $105,000.
The record before us does disclose that counsel for Appalachian did not produce records precisely differentiating between the time spent in connection with the ILSA claim and the hours devoted to the claims grounded upon state law. The testimony reveals, however, that the non-ILSA portions of the complaint were of an everyday variety easily fashioned by a practitioner with experience in litigation originating under chapter 718. The trial court, however, did reduce the 2380 hours sought by the purchasers' attorneys to 2230 thus deleting 150 hours which it attributed to the non-ILSA claims. We cannot say the trial court erred in this regard.
In its attack upon the fee award, Appalachian stresses that the purchasers' attorneys should not be rewarded for time expended in seeking, as counsel for amici, to affect the outcome of Winter v. Hollingsworth Properties, Inc., 777 F.2d 1444 (11 Cir.1985). At first blush, it does appear that the attorney time associated with participation in the Winter litigation should fall outside the ambit of compensable hours related to the representation of the purchasers. A further consideration, however, points toward the compensability of those hours. Following this court's decision in Appalachian I, Appalachian sought review in the supreme court of the same jurisdictional question which was before the Eleventh Circuit in Winter. Based upon the pendency of Winter in the Eleventh Circuit, Appalachian requested the supreme court to stay its hand until such time as the *154 Eleventh Circuit resolved Winter. In furtherance of protecting their success in Appalachian I, the purchasers joined as amici in attempting to overturn the district court's determination in Winter. Winter was reversed; ILSA was found applicable to the sale of condominium units. Having been the inspiration underlying the purchasers' efforts in the Eleventh Circuit, Appalachian should not now be heard to complain. In our view, the trial court neither abused its discretion nor offended Rowe in not excluding the time the purchasers' attorneys devoted to Winter. See Pennsylvania v. Delaware Valley Citizens' Council For Clean Air, ___ U.S. ___, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)[4] (compensation for participation in a related administrative proceeding was proper and "well within the zone of discretion" permitted trial courts). We agree with the view that "[in] the process and especially in the end result, [trial courts] must continue to be accorded wide latitude." Mares v. Credit Bureau of Raton, 801 F.2d 1197 (10th Cir.1986).
The final point we pass upon is the soundness of the trial court's determination to enhance the lodestar by a multiplier of 2. Extensive comment affirming the trial court's judgment is not required. Apart from the testimony of the expert who demonstrated knowledge of and experience in the litigation of ILSA claims that a multiplier of 2 was appropriate, the Eleventh Circuit's opinion in Winter points up the uncertainty which surrounded the sweep of the word "lot" as it appears in ILSA. Indeed, just as the purchasers exerted effort to achieve their construction of ILSA in Winter, so, too, did Appalachian appear before the Eleventh Circuit as an amicus urging affirmance of the district court's decision. 777 F.2d at 1445. In sum, it is manifest from Winter and earlier decisions that the outcome of Appalachian I was tentative and incapable of a comforting prediction of success.
AFFIRMED.
DANAHY, C.J., and SANDERLIN, J., concur.
NOTES
[1] The supreme court declined review. Appalachian, Inc. v. Olson, 482 So.2d 347 (Fla. 1985).
[2] The supreme court's opinion in Rowe was published approximately three weeks prior to the trial court's evidentiary hearing.
[3] Each of the 85 purchasers executed a contingent fee agreement contemplating a 40% attorneys' fee in the event of appellate review.
[4] Rowe is a lineal descendent of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974). See 472 So.2d at 1150, n. 5. Johnson has been the subject of comment in the United States Supreme Court. Delaware; Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The implementation of Rowe is assisted by the foregoing decisions.