SHEDD, Circuit Judge,
dissenting:
The majority holds that Juno-Loudoun, LLC (“Juno”) is not exempt from the Interstate Land Sales Full Disclosure Act (“ILSA”), despite longstanding interpretive guidelines for ILSA to the contrary. The majority then holds that, notwithstanding the fact that ILSA does not specifically provide for pre-judgment interest, the district court nonetheless abused its discretion by failing to award pre-judgment interest to Keith and Courtney Nahigian (“Nahigians”) on the debt portion of their purchase. I disagree on both points and, accordingly, I respectfully dissent.
I
The majority correctly notes that ILSA permits developers, when determining whether a subdivision qualifies for the 100-lot exemption under 15 U.S.C. § 1702(b)(1), to subtract from the total lot-count of that subdivision any lot-sale that is exempted under 15 U.S.C. § 1702(a), including lots that are exempted because they are “sales to builders.” 15 U.S.C. § 1702(a)(7); ante, at 586-87. In this case, the question is whether a developer may include in the “sales to builders” exemption any lots it intends to sell to builders in the future. The majority concludes that no future sales may be included and therefore Juno’s development was not exempt from the ILSA’s registration and disclosure requirements under § 1702(b)(1) because it contained more than 100 lots that were not exempt under § 1702(a).
I do not agree with the majority that future sales may not be counted. The majority holds that the plain language of ILSA unambiguously excludes future sales from the sales to builders exemption for purposes of the 100-lot count. Ante, at 587 n. 6. But the plain language of ILSA does not compel such a view. Nothing in the language of ILSA explicitly prohibits counting future sales, nor does the fact that the statute is written in the “present tense” foreclose the inclusion of future sales. At best, the statute is ambiguous as to whether future sales may be counted.
Because the statutory language of § 1702 is not clear on this specific point, we may consider sources external to the statute, such as an agency’s construction of the statute it administers, to determine the intended meaning of the statute. See United States v. Mead Corp., 533 U.S. 218, 227-28, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Here, the Department of Housing and Urban Development (“HUD”) has provided the Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act, 61 Fed.Reg. 13596, 13601 *594 (Mar. 27, 1996) (the “Guidelines”), which address the specific issue presented in this case. However, before examining what the Guidelines say, there is a preliminary question of whether, and to what extent, we should defer to the Guidelines’ interpretation of ILSA.
This circuit has already determined that, at least in certain instances, the Guidelines “are entitled to ‘some deference’ in interpreting [ILSA].” Long v. Merrifield Town Ctr. L.P., 611 F.3d 240, 246 (4th Cir.2010), The majority analyzes the Guidelines under Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), concluding that the Guidelines are not entitled to deference because they are not persuasive. Because I think the Guidelines are persuasive, I would defer to them. First, the Guidelines represent “a body of experience and informed judgment to which courts and litigants may properly resort for guidance.” Skidmore, 323 U.S. at 140, 65 S.Ct. 161; see, e.g., 61 Fed.Reg. 13596, 13601 (“The Guidelines are intended to assist a developer in determining whether or not a real estate offering is exempt from any or all of the requirements of [ILSA].”). Second, the Guidelines contain over forty pages of detailed analysis of each provision of ILSA, complete with explanations and examples, all of which suggest a “thoroughness evident in its consideration.” Skidmore, 323 U.S. at 140, 65 S.Ct. 161. Moreover, the Guidelines were subject to public notice and comment, further underscoring the Guidelines’ thorough consideration. Cf. U.S. Dept. of Labor v. North Carolina Growers Ass’n, 377 F.3d 345, 354 (4th Cir.2004) (“Because the bulletins were not adopted after notice and comment rulemaking, they lack the thoroughness of such rules.”).[1] Third, the “validity of [the Guidelines’] reasoning,” Skidmore, 323 U.S. at 140, 65 S.Ct. 161, is illustrated by the numerous instances wherein the Guidelines accord with the clear directives of ILSA, and is confirmed each time such reasoning has been upheld as valid. See, e.g., Long, 611 F.3d at 246 (affirming and adopting the Guidelines’ interpretation of § 1702(a)(2)); see also Winter v. Hollingsworth Properties, Inc., 777 F.2d 1444 (11th Cir.1985) (adopting the Guidelines’ longstanding interpretation of ILSA as it relates to the sale of condominiums). Even the majority acknowledges portions of the Guidelines are consistent with the plain language of ILSA. Ante, at 586-87. Finally, the Guidelines’ interpretation of § 1702 is “consistent ] with earlier and later pronouncements” by HUD, Skidmore, 323 U.S. at 140, 65 S.Ct. 161; as HUD’s primary publication for explaining ILSA’s numerous exemption, the Guidelines have remained substantively unchanged and unchallenged for nearly thirty years. In light of all of these factors, I find the Guidelines have the “power to persuade.”[2] Id. Accordingly, I would defer to their interpretation of § 1702.
*595 By deferring to the Guidelines, the resolution of this appeal is simple: the Guidelines make clear that (1) the transactions that qualify under any of the exemptions in § 1702 may include future sales, and (2) the developer is not required to specifically identify the reserved lots. See 61 Fed. Reg. 13596, 13604. In fact, the Guidelines provide a specific example that is nearly identical to the facts of this appeal:
For example, a developer of a subdivision containing a total of 129 lots since April 28, 1969, qualifies for this exemption if at least 30 lots are sold in transactions that are exempt because the lots had completed homes erected on them. The 30 exempt transactions may fall within any one exemption or a combination of exemptions noted in § 1710.5(b) through (h) and may be either past or future sales. In the above example, the developer also could qualify if twelve lots had been sold with residential structures already erected on them, nine lots had been sold to building contractors and at least nine lots were reserved for either the construction of homes by the developer or for sales to building contractors. The reserved lots need not be specifically identified.
Id. (emphasis added). Clearly, under the Guidelines, Juno could include future lot-sales to builders in calculating these exemptions and was not required to identify those lots to the Nahigians. The record here is undisputed: Juno has always intended to sell “at least half, or 82” of its lots to building contractors; Juno never planned to sell more than ninety-nine lots to individuals; Juno did in fact reserve and sell lots to building contractors; and Juno never even came close to exceeding the number of transactions allowed by the 100-Lot Exemption.[3] J.A. 54-58, 294-99. Therefore, Juno is exempt from ILSA.
II
In addition, I disagree with the majority’s decision to award the Nahigians prejudgment interest on the debt portion of their purchase. ILSA does not specifically authorize prejudgment interest, but does give courts great discretion in determining the remedy for violations of ILSA, and provides that a court “may order damages ... or such other relief as the court deems fair, just, and equitable.” 15 U.S.C. § 1709(a) (emphasis added). As the majority correctly acknowledges, the district court has “wide latitude to fashion its award,” and we should reverse the district court only if it abused its discretion. Ante, at 591-92 & n. 8. In light of this standard of review, the discretion afforded by the statute, and especially given the nuances of this case (such as the discovery sanctions against the Nahigians for their fabrication of evidence and false testimony, as well as the consideration the district *596 court gave to the § 1709(a) factors),[4] I fail to see how the district court abused its discretion by carefully tailoring its decision to award pre-judgment interest on some— but not all — of the purchase price.[5]
Ill
For the foregoing reasons, I respectfully dissent.

. See Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act, 48 Fed.Reg. 44412 (proposed Sept. 28, 1983) (publishing "Notice of Proposed Guidelines” with comments to be received by November 28, 1983); Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act, 49 Fed.Reg. 31375 (Aug. 6, 1984) (publishing "Notice of Final Guidelines”) (to be codified at 15 C.F.R. pt. 1710 app. A); see also Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act, 61 Fed.Reg. 13596 (Mar. 27, 1996) (streamlining final rule and noting no public notice and comment was required because the final rule "did not make substantive changes” to the previous version).

. The majority makes much of the purpose of the act, ante at 587 n. 6, but it is obvious that the legislation is a balance between various interests, including lot purchasers and developers. See, e.g., Bodansky v. Fifth on Park Condo, LLC, 635 F.3d 75, 81 (2d Cir.2011) (noting the 100-lot exemption was added to ILSA as part of several amendments designed *595 to "balance the consumer's need for adequate protections and remedies with the small businessman's concern with over regulation”). The existence of the exemption at question makes clear that the law is not intended to be an ironclad protection for every lot purchaser. The law strikes a balance between competing interests and the Guidelines accurately reflect that balance.

. Juno's plan to sell at least 65 lots to builders in order to qualify for the 100-lot exemption was explicitly expressed in a May 2005 Opinion Letter from counsel at the outset of the development’s creation — not in the face of litigation as the majority implies. J.A. 57. Juno did not obtain an advisory opinion from HUD, but such an opinion is not required for the exemptions to apply. 24 C.F.R. § 1710.4(d). Additionally, had Juno obtained an advisory opinion, it is difficult to imagine that HUD would have advised Juno in a manner inconsistent with HUD's own specific Guidelines.

. Contrary to the insinuation of the majority, ante at 592 n. 9, I do not suggest that the district court expressly noted these factors in its award of prejudgment interest. However, it is simply a fact that the district court awarded interest on some, but not all, of the Nahigians' purchase price based on the record before it. To assume otherwise, as the majority must, means the court acted without reason or rationale. That is indeed an odd way to review a court under the abuse of discretion standard. But if the majority would apply the abuse of discretion standard in this manner, the proper result would be to remand for the district court to more clearly express its rationale.

. Even if we were to set aside the reasoned judgment of the district court and award the Nahigians pre-judgment interest on the debt payments, I believe the appropriate rate would be the same 4.99% awarded to the Nahigians for the equity portion of their purchase, because the district court has already decided that this rate, not the BB & T loan rate, represents the time value of their capital.