Manuel Benet GIRALT, a/k/a Manuel Benet, Plaintiff–Appellee,

v.

VAIL VILLAGE INN ASSOCIATES, a Colorado partnership, d/b/a Village Inn Plaza; Cowperthwaite–Vail, Ltd., a Colorado limited partnership, James Cowperthwaite; Charles H. Cowperthwaite; Robert E. Barrett; and G. Richard Katzenbach, Defendants–Appellants.

No. 85CA0602.

Colorado Court of Appeals, Div. III.

March 31, 1988.

Rehearing Denied April 28, 1988.

Certiorari Denied Aug. 29, 1988.

Otto, Peterson & Post, Frederick C. Otto, Vail, Porterfield & Wheatley, Wendell B. Porterfield, Jr., Denver, for plaintiff-appellee.

Pendleton & Sabian, P.C., Alan C. Friedberg, Ted D. Gardenswartz, Denver, for defendants-appellants.

TURSI, Judge.

Defendants, Vail Village Inn Associates, Cowperthwaite–Vail, Ltd., James Cowperthwaite, Charles H. Cowperthwaite, Robert E. Barrett, and G. Richard Katzenbach, appeal the summary judgment entered in favor of plaintiff, Manuel Benet Giralt. They assert (1) that the trial judge should have disqualified himself prior to his entry of summary judgment; (2) that plaintiff failed to establish the jurisdiction of the federal Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701, et seq. (1982) (the Act); (3) that the Act did not apply to their condominium project; and (4) that their project was within exemptions to the Act. We affirm.

Defendant Vail Village Inn Associates (Vail Village) is a general partnership whose general partners are the other named defendants. Vail Village developed a residential and commercial condominium complex in Eagle County.

In August of 1981, approximately four months after construction had begun on the project, Giralt executed a purchase agreement with Vail Village to purchase a residential unit. A week later he executed a second agreement to purchase an additional residential unit. Giralt made a total earnest money deposit of $185,000. In May of 1982, the parties modified both contracts agreeing that Giralt would pay Vail Village for some additional options.

In January of 1983, Giralt informed Vail Village that he did not have sufficient funds to close on both units, but that he could close on one if he could pool his earnest money deposits and delay the closing. Vail Village agreed to Giralt's purchase of only one unit subject to several conditions. Those conditions were not met and Vail Village retained Giralt's earnest money deposits as liquidated damages pursuant to the original purchase agreements.

Giralt filed this action to recover his $185,000 earnest money deposits. Pointing to requirements set out in the Act, he asserted, in part, that at the time the purchase agreements were executed 1) a "statement of record" regarding the project was not in effect, and 2) he was not provided a "property report" in advance of his signing the purchase agreements. Consequently, he sought revocation of the contracts pursuant to 15 U.S.C. § 1703(c) (1982) and recovery of his earnest money deposits.

Giralt moved for summary judgment on his claim pursuant to the Act. At the hearing, it was conceded that no "statement of record" had been in effect and that Vail Village had not provided Giralt a "property report." Instead, Vail Village argued the project was within exceptions to

the Act; therefore, it was not required to provide either.

The trial court entered summary judgment in favor of the plaintiff determining that there were no genuine issues of material fact and concluding the project was not within any of the exceptions to the Act. The trial court further determined that entry of summary judgment on this claim rendered Giralt's alternative claims for relief moot. It entered final judgment against the defendants for $185,000.

Defendants filed this appeal of the trial court's entry of summary judgment. Ten days prior to the scheduled oral arguments, defendants filed a motion for remand to the trial court for determination of a motion for relief from judgment and for disqualification of the trial judge with a supporting affidavit from Charles Cowperthwaite. They asserted that they had recently discovered that the trial judge had been the subject of disciplinary proceedings before the Commission of Judicial Discipline at a time when it was probable that Blanche Cowperthwaite served on the Commission. Blanche Cowperthwaite is the mother of two named defendants and a member of the family partnership Cowperthwaite-Vail, Ltd. Therefore, defendants maintained that Blanche Cowperthwaite's involvement in the disciplinary proceedings must have affected the trial judge's partiality in deciding the case and that the judge should have disqualified himself on his own motion.

This court granted the remand, and Blanche Cowperthwaite submitted a sealed, confidential affidavit and an unsealed affidavit to the trial court. After considering the motion, affidavits and arguments of the parties, the trial judge denied defendants relief from the judgment. However, since he was made aware, subsequent to his entry of summary judgment, that Blanche Cowperthwaite had an interest in the property involved in the action, the trial judge disqualified himself from any future action in the case. He returned the action to this court for a decision on the merits.

## I

Before addressing the defendants' challenges to the summary judgment, we consider their assertion that the trial judge should have disqualified himself before he entered that judgment because his impartiality might reasonably be questioned. We conclude that such disqualification was not required.

"A judge shall be disqualified in an action in which he is interested or prejudiced ... or is so related or connected with any party or his attorney as to render it improper for him to sit on the trial, appeal, or other proceeding therein." C.R.C.P. 97; see Code of Judicial Conduct Canon 3(C).

■ Even though a trial judge believes in his or her own impartiality, the court's duty is to "eliminate every semblance of *reasonable* doubt or suspicion that a trial by a fair and impartial tribunal may be denied." *Johnson v. District Court*, 674 P.2d 952 (Colo.1984) (emphasis in original).

■ When presented with a motion for disqualification, the trial judge is required to accept as true the facts stated in the motion and accompanying affidavits and determine only their legal sufficiency. *Zoline v. Telluride Lodge Ass'n*, 732 P.2d 635 (Colo.1987); *People v. Botham*, 629 P.2d 589 (Colo.1981). To be legally sufficient, the motion and affidavits must state facts from which it may reasonably be inferred that the judge has a bias or prejudice that will prevent him from dealing fairly with the moving party. *Zoline v. Telluride Lodge Ass'n, supra*.

■ The question of whether a judge should be disqualified in a civil case is a matter within the discretion of the trial court, and its ruling thereon will not be reversed unless an abuse of discretion is shown. *Zoline v. Telluride Lodge Ass'n, supra; In re Marriage of Mann*, 655 P.2d 814 (Colo.1982).

■ Here, the defendants contend that Blanche Cowperthwaite's service on the Commission of Judicial Discipline which considered a matter involving the trial judge during her tenure, coupled with her relationship with the defendants, mandates

that the trial judge's impartiality in deciding this case might reasonably be questioned.

However, we must consider the facts before the trial judge at the time he entered summary judgment against the defendants. At that time there was no information before the trial judge establishing a relationship between the defendants and Blanche Cowperthwaite. Furthermore, because of the similarity of names, the trial judge had reviewed the entire court file to determine whether Blanche Cowperthwaite had any connection with the action and found none.

Therefore, our review of the record, including Charles and Blanche Cowperthwaite's affidavits (sealed and unsealed), reveals no reasonable inference of bias or prejudice toward a party up to and including the time when summary judgment was entered. Hence, the trial judge's decision not to grant relief from that judgment was proper and will not be reversed on appeal.

Since there was no appearance of impropriety in this case, we address the questions of law presented for our review. *Cf. Williams v. Farmers Insurance Group, Inc.*, 720 P.2d 598 (Colo.App.1985) (where trial court determination was tainted by an appearance of impropriety, this court would not address the questions of law presented for review).

### II

■ For the first time at oral argument, the defendants raised a question of jurisdiction in this case. They argued that in reviewing the complaint, answer, transcript, and order there was absolutely no reference to use of interstate commerce or the mails; therefore, the jurisdictional element of the Act specified in 15 U.S.C. § 1703(a) (1982) was not met.

However, the affidavit of James Cowperthwaite in opposition to plaintiff's motion for partial summary judgment states that Vail Village sent two letters to plaintiff via certified mail—return receipt requested which notified him that the closing date for the two units was January 13, 1983. Therefore, defendants have admit-

ted they used the mails and their challenge to jurisdiction is without merit.

### III

Defendants assert the trial court erred on several grounds in granting plaintiff summary judgment on his claim pursuant to the Act. Summary judgment will be granted only if no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. C.R.C.P. 56(c). Once a movant makes a convincing showing that genuine issues are lacking, the opposing party is required to demonstrate by relevant and specific facts that a real controversy exists. *Ginter v. Palmer & Co.*, 196 Colo. 203, 585 P.2d 583 (1978).

■ First, they argue that the Act applies only to the sale or lease of lots in a subdivision and that "lot" refers to land and does not include condominiums; therefore, the Act is inapplicable here. We disagree.

The Secretary of Housing and Urban Development (HUD) has defined "lot" as "any portion, piece, division, unit, or undivided interest in land located in any state or foreign county if the interest includes the right to the exclusive use of a specific portion of the land." 24 C.F.R. § 1710.1 (1987). The Office of Interstate Land Sales Registration, which administers the Act, treats each condominium unit as a lot. 38 Fed.Reg. 23,866 (1973).

When a court is faced with a problem of statutory construction, deference should be given to the interpretation given the statute by the agency charged with its administration. *Environmental Protection Agency v. National Crushed Stone Ass'n*, 449 U.S. 64, 101 S.Ct. 295, 66 L.Ed.2d 268 (1980); *Lucero v. Climax Molybdenum Co.*, 732 P.2d 642 (Colo.1987). Furthermore, the other jurisdictions which have addressed this issue uniformly hold that condominiums are included in the definition of "lots." *Winter v. Hollingsworth Properties, Inc.*, 777 F.2d 1444 (11th Cir.1985); *Schatz v. Jockey Club Phase III, Ltd.*, 604 F.Supp. 537 (S.D.Fla.1985); and *Nargiz v.*

*Henlopen Developers*, 380 A.2d 1361 (Del. 1977).

We conclude condominiums are "lots" within the application of the Act.

## IV

Defendants also maintain they fall within the exemptions to the Act set out in 15 U.S.C. § 1702(a)(2). That section states that the provisions of the Act:

"shall not apply to the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years...."

First, defendants maintain that in January of 1983 plaintiff and Vail Village entered a substitute agreement that plaintiff would pool his deposits and purchase only one condominium. They further argue that in January of 1983 the condominium declaration had been filed and the certificate of occupancy issued; therefore, the condominium existed at that time and its attempted sale was exempt under the first part of the exemption.

However, we conclude that no substitute agreement was entered into by the parties; therefore, defendants may not rely on the January 1983 date to argue they are within the exception.

■■■■ Where the evidence of agreement consists of documents, the determination of their effect is a matter of law for the court. *Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo. 1984); *Radiology Professional Corp v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (1978). Extraneous evidence is admissible to prove intent only if there is an ambiguity in the terms of the contract. *Radiology Professional Corp v. Trinidad Area Health Ass'n, supra.* Whether ambiguity exists in a contract is also a question of law for the court. *Pepcol Manufacturing Co. v. Denver Union Corp., supra.*

■■■■ The defendants assert four documents established the substitute agreement. All four were either letters or telexes from defendant Charles Cowperthwaite to plaintiff and each stated essentially the same terms.

"At the request of your attorney, Fred Otto, this will confirm our agreement, subject to the conditions set forth below, to permit you to take title to Condominium Unit 105 ... with the deposits on both Unit 105 and 107 ... to be applied toward this purchase.... Our agreement to the foregoing is subject to the following conditions:

1. The sum of $290,000 must be deposited in Mr. Otto's trust account by January 26, 1983.

2. The closing of this transaction must occur not later than January 31, 1983.

3. Completion of the wire-transfer will operate to terminate all rights you have in the Purchase Agreement dated August 4, 1981 relating to the purchase of Unit [107].

Should the above conditions not be met within the time periods specified above, Vail Village Inn Associates will consider you in default as to both Purchase Agreements and elect to retain all deposits made thereunder as liquidated damages, all in accordance with said Purchase Agreement."

We conclude the terms of the agreement are unambiguous. The proposed substitute agreement was contingent upon the performance of specific conditions by plaintiff. Further, Vail Village retained the right to hold plaintiff in default pursuant to the original agreements should plaintiff fail to meet the conditions. It is undisputed that plaintiff failed to fulfill those conditions. Therefore, the parties did not enter a substitute agreement.

■■■■ Next, defendants argue that the project was within the first part of the exception because the project was a "building" either at the time the original purchase agreements were entered or, if not then, when the contracts were modified to include additional options. They maintain

that the term "building" may apply either to a finished or an unfinished product of construction.

However, for the purposes of this exemption regarding condominium dwellings the Secretary of Housing and Urban Development has defined building as "the dwelling unit and all utilities or systems necessary to support normal occupancy." 38 Fed. Reg. 23,866 (1973).

The defendants concede the project was only 21 percent complete at the time the sale contracts were executed and only 83 percent complete when the contracts were modified. Consequently, it is undisputed that the condominium units did not exist, nor could they support normal occupancy at either time the defendants argue that the sale occurred. Therefore, their project was not a "building" at the time of the sale and was not within the first part of the exception.

■ The defendants also maintain the project was within the second part of this exception since the original purchase agreements obligated Vail Village to complete the improvements within two years of the execution of the agreements. Again we disagree.

The agreements provide:

"Seller anticipates that the construction of the Unit to be conveyed hereunder shall be completed on or before December 1, 1982 (sometimes referred to herein as the 'completion date'). Seller's obligation to provide said Unit, however, and thereafter to close on this Agreement by the Closing Date provided herein is expressly subject to and said dates for completion and closing shall be deemed extended by, any period or delay resulting from the inability to obtain materials, adverse weather, strikes, acts of war, shortages of labor, acts of god, aggression, destruction, subcontractor's breaches of contract, change orders contracted for by Purchaser, governmental regulations, court decrees or orders or any other condition or occurrence beyond the control of Seller.

. . . .

"Should Seller be unable or refuses to complete and close the sale of the Unit hereunder to Purchaser, as herein set forth by reason of failure of title or otherwise ... upon repayment to Purchaser of all funds deposited hereunder, Seller and Purchaser shall be relieved of all further obligations hereunder. . . ."

Interpretation of a written contract and determination of whether it is ambiguous are questions of law for the court. *Pepcol Manufacturing Co. v. Denver Union Corp., supra.*

We conclude this contract is not ambiguous. The contract does not obligate Vail Village to complete the project within two years. Instead, it merely provides an *anticipated* completion date. Furthermore, the contract provides the seller the right to refuse to complete the condominium for any reason whatsoever. Therefore, the project is not within the second part of the exemption.

**V**

■ Finally, defendants contend that there is a legal issue as to how many condominiums exist in the project. They maintain the 107 parking units contained in the project are not condominiums pursuant to the Condominium Ownership Act, § 38–33–101, et seq., C.R.S. (1982 Repl.Vol. 16A); therefore, the project is within the terms of 15 U.S.C. § 1702(b)(1) exempting from the Act the sale of lots in a subdivision containing fewer than one hundred lots.

However, it is irrelevant whether the parking units are condominiums pursuant to Colorado law. What we must determine is whether they are lots within the meaning of the Act.

As stated above, "lot" is defined as "any portion, piece, division, unit, or undivided interest in land located in any state or foreign county *if the interest includes the right to the exclusive use of a specific portion of the land.*" 24 C.F.R. § 1710.1 (1987) (emphasis supplied). The Secretary of Housing and Urban Development has

stated that the reason condominiums are treated as lots pursuant to the Act even though they are not land, per se, is because they carry the indicia of real estate and that the right to condominium space is a form of ownership not a structural description. 38 Fed.Reg. 23,866 (1973).

Here, the project's Declaration of Covenants, Conditions and Restrictions states that the project is divided into 141 condominiums (including the 107 parking condominiums), each consisting of a separate fee simple estate in a particular condominium and that each owner shall be entitled to the exclusive ownership and possession of his condominium.

Since the parking units are interests in real estate and a form of ownership of space to which the owners have the right to exclusive use, we conclude they are lots within the meaning of the Act.

Plaintiff's request for attorney fees incurred on this appeal is denied.

Judgment affirmed.

STERNBERG and BABCOCK, JJ., concur.