**Terry Lee HIBBS, Plaintiff–Appellee,**

v.

**COLORADO DEPARTMENT OF REVENUE, Defendant–Appellant.**

No. 03CA1369.

Colorado Court of Appeals, Div. I.

Oct. 7, 2004.

Certiorari Granted Feb. 28, 2005.

Law Office of Pete Cordova, P.C., Pete Cordova, M. Stuart Anderson, Salida, Colorado, for Plaintiff–Appellee.

Ken Salazar, Attorney General, Ceri Williams, Assistant Attorney General, Denver, Colorado, for Defendant–Appellant.

KAPELKE, J.

In this driver's license revocation case, the Colorado Department of Revenue (the Department) appeals a district court order reversing a hearing officer's order revoking the commercial driver's license of Terry L. Hibbs. We affirm.

On December 4, 2002, a police officer saw Hibbs drive his truck through a red light. After stopping the truck, the police officer noticed that Hibbs appeared to be intoxicated. The results of a breath test showed that

he had a breath alcohol content (BAC) of 0.151.

The police officer completed a combined affidavit and notice of revocation form and served it on Hibbs. On the form, the officer checked a box stating, "Because you submitted to testing which disclosed an alcohol concentration of 0.10 or more, your driver's license and/or driving privilege is hereby revoked for a minimum of THREE MONTHS FOR A FIRST REVOCATION . . . ." Other than describing the vehicle he had been driving as a semitractor truck, the form did not indicate that Hibbs had been operating a commercial vehicle at the time of his arrest. No checkmark was placed in the "COMMERCIAL/HAZMAT OPERATOR" box of the form, which provides: "Because you submitted to testing which disclosed an alcohol concentration of 0.04 or more, your driver's license and/or driving privilege is hereby revoked for a minimum of ONE YEAR FOR THE FIRST OFFENSE . . . ."

The police officer forwarded copies of the citation and the completed affidavit and notice of revocation form to the Department. In addition, she submitted a report consisting of (1) an incident report and narrative; (2) DUI and arrest reports; (3) a warrantless arrest probable cause statement; and (4) information relating to the breathalyzer test and results. Although the probable cause statement was notarized, the report as a whole was not notarized or otherwise signed and sworn to by the officer before another person.

The Department issued two separate "Orders of Revocation." The first order provided that, in conformity with § 42–2–126, C.R.S.2003, Hibbs's license was revoked for three months because he had operated a "motor vehicle" while having an alcohol content of 0.10 or more. The second order provided that because Hibbs had been operating a "commercial motor vehicle" while having an alcohol content of 0.04 or more, his license was revoked for one year in accordance with § 42–2–126. Both orders notified Hibbs that he had the right to request a hearing.

In response to Hibbs's timely request for a hearing, the Department issued a "Notice of Hearing." In this notice, the Department stated that the hearing concerned "revocation of your commercial driver privilege for driving a commercial motor vehicle when you had a blood alcohol content of .04 or more pursuant to [§ ] 42–2–126, C.R.S."

At the revocation hearing, the police officer admitted that she had checked the incorrect box on the notice of revocation form and had failed to indicate that Hibbs had been driving a commercial vehicle. The hearing officer nevertheless found that Hibbs had been driving a commercial motor vehicle, that he had a BAC of 0.10 or more at the time of his arrest, and that he had not been prejudiced by the officer's having treated the "paperwork the same way she does that of a [noncommercial] motor vehicle driver."

Based on these findings, the hearing officer issued two orders of revocation. Citing § 42–2–126 generally, the first order revoked Hibbs's license for a period of three months. The second order revoked his license for one year based on a finding that the facts supported revocation under § 42–2–405, C.R.S. 2003, the statute pertaining to driver's license disciplinary actions involving commercial motor vehicles. Only the one-year revocation order is at issue here.

The district court granted a stay of the one-year revocation order and, upon review, reversed the order and directed the Department to reinstate Hibbs's license. The court concluded that (1) the Department had violated § 42–2–126(3)(b), C.R.S.2003, by holding the revocation hearing without having received a "verified report" from the police officer; and (2) by failing to notify Hibbs that it was seeking a one-year revocation of his commercial license, the Department violated his statutory and constitutional due process rights.

■ The Department contends that the district court erred in determining that the Department lacked jurisdiction to revoke Hibbs's commercial driver's license for one year based on the arresting officer's failure to provide the Department with a verified report of all information relevant to the action. We disagree.

Pursuant to § 42–2–126(3)(b),

A law enforcement officer who has probable cause to believe that a person was driving a commercial motor vehicle with a blood alcohol concentration of 0.04 or more ... *shall forward* to the department a *verified report* of all information relevant to the enforcement action, including information that adequately identifies the person, a statement of the officer's probable cause for belief that the person committed such violation, a report of the results of any tests that were conducted, and a copy of the citation and complaint, if any, filed with the court.

(Emphasis added.)

Our primary duty in construing a statute is to give effect to the General Assembly's intent, which we accomplish by first examining the statutory language. *Garhart ex rel. Tinsman v. Columbia/Healthone, L.L.C.*, 95 P.3d 571 (Colo.2004). In determining legislative intent, "[w]e afford the statutory language its ordinary and common meaning, giving effect to *every* term and provision." *Telluride Resort & Spa, L.P. v. Colo. Dep't of Revenue*, 40 P.3d 1260, 1265 (Colo.2002) (emphasis added).

Here, giving effect to "every" term in § 42–2–126(3)(b), we conclude that, with respect to proceedings involving a driver of a commercial motor vehicle with an excessive blood alcohol content, the General Assembly intended to require a police officer to provide the Department not merely a report, but, rather, a "verified" report.

Although the term "verified" is not defined in the statute, we can discern the General Assembly's intended meaning of the term by reviewing the legislative history of § 42–2–126(3)(a), C.R.S.2003, the provision pertaining to revocation proceedings for those persons having a BAC of 0.10 or more while driving "any vehicle." Before the 1989 amendments of former § 42–2–126(3)(a), the statute required, as in the current version of § 42–2–126(3)(b), that a police officer forward a "verified report of all information relevant to the enforcement action" to the Department. Colo. Sess. Laws 1988, ch. 293, § 42–2–122.1(2)(a) at 1360; *see Alford v. Tipton*, 822 P.2d 513, 515 (Colo.App.1991). In the current § 42–2–126(3)(a), as amended, however, the General Assembly deleted the requirement that the police officer's report

be verified and, instead, required only that "an affidavit" be provided. In addition, the General Assembly specified that the "affidavit shall be dated, signed, and sworn to by the law enforcement officer under penalty of perjury, *but need not be notarized or sworn to before any other person.*" *See* § 42–2–126(3)(a) (emphasis added); *Alford v. Tipton, supra.*

Based on this legislative history, we conclude that the General Assembly's intended meaning of "verified report" is a report that is "notarized or sworn to before [another] person." This definition is consistent with the common meaning of "verified" as used in its ordinary context. *See Black's Law Dictionary* 1556 (7th ed.1999)("verification" is defined as a "formal declaration made in the presence of an authorized officer, such as a notary public, by which one swears to the truth of the statements in the document"); *see also McClellan v. State*, 731 P.2d 769, 771–72 (Colo.App.1986)(finding that report was properly verified where an attestation to the accuracy of the documents was both signed by the police officer and notarized, and the officer testified to their correctness).

Because the report here was not notarized or otherwise sworn to before any person, the district court properly ruled that § 42–2–126(3)(b) had been violated.

■ Further, this statutory violation deprived the Department of jurisdiction to revoke Hibbs's license for one year. Section 42–2–126(3)(b) does not specifically state that compliance with its provisions is a jurisdictional prerequisite to revocation actions by the Department. However, reading § 42–2–126(3)(b) and (4)(a), C.R.S.2003, together, we construe the statute's requirement of a verified report as creating a jurisdictional condition to revocation determinations involving commercial motor vehicle operators.

First, the statute provides that the officer "shall" forward a verified report to the Department. The term "shall" is presumed to have a mandatory meaning. *Morgan v. Genesee Co.*, 86 P.3d 388, 393 (Colo.2004). Also, § 42–2–126(4)(a) provides that "*[u]pon receipt of the affidavit of the law enforcement officer and the relevant documents required by subsection (3) of this section,* the department shall make the determination [of revo-

cation]" (emphasis added). Thus, not only is a police officer required to comply with § 42-2-126(3)(b) by providing a verified report to the Department, but also, according to the plain language of § 42-2-126(4)(a), receipt of such a report is a prerequisite to invoking the Department's jurisdiction in revocation proceedings involving commercial motor vehicle operators. *See Telluride Resort & Spa, L.P. v. Colo. Dep't of Revenue, supra,* 40 P.3d at 1265 ("[w]hen construing statutes, we should ... construe each provision in harmony with the overall statutory design"); *see also Alford v. Tipton, supra* (in license revocation involving noncommercial motor vehicle operator, deletion of former statutory requirement that a "verified report" be provided evidences relaxation of requirements for invoking jurisdiction of the Department).

Further, for proceedings under § 42-2-126(3)(b), the General Assembly's use of the term "verified" evidences a legislative intent to require a heightened level of reliability of those documents on which commercial vehicle revocation determinations are based. The officer's failure to have the report verified affected the reliability of the information on which the Department made its revocation determination as a result of that failure the Department lacked jurisdiction to revoke Hibbs's license for one year. *See Alford v. Tipton, supra,* 822 P.2d at 515 (whether the Department acquires jurisdiction in revocation actions under former § 42-2-126 depends on whether the documents "contain sufficient information of a reliable character to permit the Department to make a revocation determination").

Because the Department's determination that Hibbs had been operating a commercial motor vehicle with an excessive BAC was not based on a verified report, we agree with the district court that the Department lacked jurisdiction to revoke Hibbs's license for one year.

The order is affirmed.

Judge MARQUEZ and Judge PICCONE concur.