**Petitioner: The COLORADO DEPARTMENT OF REVENUE,**

v.

**Respondent: Terry Lee HIBBS.**

**No. 04SC759.**

Supreme Court of Colorado.

Nov. 7, 2005.

John W. Suthers, Attorney General, Ceri Williams, Assistant Attorney General, Business and Licensing Division, Denver, for Petitioner.

Law Office of Pete Cordova, P.C., Pete Cordova, Law Office of M. Stuart Anderson, P.C., M. Stuart Anderson, Salida, for Respondent.

HOBBS, Justice.

We granted certiorari to review the court of appeals judgment in *Hibbs v. Colorado Department of Revenue*, 107 P.3d 1061 (Colo. App.2004).[1] The court of appeals upheld a judgment of the District Court for Chafee County that overturned the Department of Revenue's one-year revocation of Terry Lee Hibbs's commercial vehicle driver's license.

The Department of Revenue's ("Department") revocation order stemmed from Officer Theresa Barger's ("Barger") arrest of Terry Lee Hibbs ("Hibbs") for driving a commercial vehicle while intoxicated. Using the form specified by the Department, Barger submitted to Hibbs and to the Department a report documenting the circumstances of the arrest and that Hibbs's breath alcohol content while driving was 0.151, nearly four times the legal limit, § 42-2-126(2)(a)(III), C.R.S. (2002). Barger signed and swore, under oath, to the veracity of the report but did not notarize the report or otherwise affirm the report before a third party. Shortly thereafter, Barger testified at Hibbs's administrative hearing, under oath and subject to cross examination, concerning the events surrounding Hibbs's arrest for driving while intoxicated. After reviewing all of the evidence, the Department's hearing officer ordered revocation of Hibbs's commercial driver's license for one year.

1. The question we took on review is: Whether the court of appeals erred in holding that failure to notarize all the documents submitted to the Colorado Department of Revenue ("Department") pursuant to section 42-2-126(3)(b), C.R.S. (2004) was a statutory violation that deprived the Department of jurisdiction to hold a license revocation hearing.

The district court and the court of appeals overturned this revocation and ruled that the statute then in effect for a commercial vehicle driver's license, section 42–2–126(3)(b), C.R.S. (2002), required a law enforcement officer to forward to the Department a notarized report setting forth the basis for the revocation action.

The Department contends that Barger's report to the Department satisfied section 42–2–126(3)(b). We agree, and hold that the verification requirement of section 42–2–126(3)(b), C.R.S. (2002),[2] did not require notarization and was satisfied in this case by Barger's signature and affirmation, under penalty of perjury, that the facts contained in her report submitted on the Department's form were true to the best of her belief. Thus, we reverse the judgment of the court of appeals with directions to reinstate the Department's one-year revocation of Hibbs's commercial vehicle driver's license.

## I.

On the icy night of December 4, 2002, Silverthorne Police Department Officer Barger stopped Hibbs, who was driving a semi tractor-trailer, for running a red light. She observed that he had "watery, red bloodshot eyes, and slow, deliberate, thick tongued, and slurred speech." He failed three roadside sobriety tests: the horizontal gaze, the walk and turn, and the one leg stand tests.

Advised of Colorado's express consent law, Hibbs elected to take a breath test. He tested at 0.151 grams of alcohol per two hundred ten liters of breath, nearly four times the legal limit of .04 grams for commercial drivers. Barger transported Hibbs to the Summit County Jail and issued him a court summons for driving while intoxicated and running a red light. She also signed and filled-out the Department's Affidavit and Notice of Revocation form (Department of Revenue Form DR–2576).

This was the first situation in which Barger had been called upon to utilize the Department's form when a commercial vehicle was involved. Although she checked that Hibbs was driving a commercial vehicle, she did not check the "0.04" box that stated the limit for commercial vehicle drivers. Instead, she checked the "0.10" box for other motor vehicle drivers. Nevertheless, the back side (second page) of the Affidavit and Notice of Revocation form clearly placed Hibbs on notice that his commercial driver's license was subject to revocation for exceeding the .04 limit. It stated:

6. *If you submit to a test which discloses an alcohol content of 0.04 or more (Commercial/HAZMAT Operators) or 0.10 or* more or at least 0.02 but less than but less than 0.04 (Commercial/HAZMAT Operator under 21) or at least 0.02 but less than 0.10 (operator under age 21), *the officer shall serve a Notice and Order of Revocation on behalf of the Department of Revenue* to become effective on the eighth (8th) day after *date shown on the other side.

(emphasis added).

Barger narrated on the Department's form the facts of her stop and arrest of Hibbs under the "probable cause" space. She included the results of the excessive alcohol breath test at 0.151, and signed the report in the signature block set forth at the bottom of the form. That signature block contained the following language: *I swear (or affirm) under penalty of perjury that the information and facts contained in this Affidavit and Notice of Revocation are true to the best of my knowledge and belief.* (emphasis in original).

Barger forwarded the filled-out form to the Department along with the signed intoxilyzer test results, certified intoxilyzer records, a Silverthorne Police Department Incident Narrative, an arrest report, a DUI report, a notarized warrantless arrest probable cause statement, a Summit County Sheriff's Office Arrest Summary Report, and summonses for driving a vehicle under the influence of alcohol, driving a vehicle with excessive alcohol content in his blood or breath, and failing to obey a traffic control device. The Department form Barger

---

2. Amended in 2005, subsection 42–2–126(3)(a), C.R.S. (2005), now eliminates subsection 3(b) and the "verification" requirement for a commercial driver's license revocation report. *See also* Ch. 185, sec. 16, § 42–2–126(3)(a)–(b), 2005 Colo. Sess. Laws 640, 647.

filled out and swore to included information that identified Hibbs by name, social security number, and birthdate, a statement of Barger's probable cause for belief that Hibbs drove while under the influence of alcohol, and the intoxilyzer results and time of the test.

When the Department received Barger's report and documentation, it sent Hibbs a notice of revocation for one year and scheduled an administrative hearing on "revocation of your commercial driver privilege for driving a commercial motor vehicle when you had a blood alcohol content of .04 or more pursuant to 42–2–126 CRS." The Department also sent Hibbs a notice of revocation of his motor vehicle driving privilege for three months for violating the 0.10 limit and scheduled the administrative hearing to include that revocation.

Through counsel at the hearing, Hibbs argued that the report Barger forwarded to the Department on its form along with accompanying documents was inadequate for lack of notarization and that the Department's revocation of his commercial vehicle driver's license should be reversed for lack of jurisdiction. Barger testified at the hearing under oath to the facts and circumstances of her arrest of Hibbs for driving a commercial vehicle while intoxicated and her report and documentation to the Department.

After hearing Barger's and Hibbs's testimony and reviewing the documentary evidence, the hearing officer found Hibbs to be in violation of the 0.04 limit for a commercial vehicle operator and revoked all of his driving privileges for three months and his commercial vehicle driver's privilege for one year, as provided by subsections 42–2–126(6)(b)(I) and (III), C.R.S. (2002). The hearing officer ruled that Barger substantially complied with section 42–2–126(3)(b)'s requirements for a "verified" report by using the Department's form and supplying the other documents and there was no jurisdictional defect in the proceedings.

Hibbs appealed to the district court and prevailed in overturning the commercial driver's license revocation. Affirming the district court's ruling, the court of appeals held that section 42–2–126(3)(b) required Barger to submit a notarized report to the Department and her failure to do so deprived the Department of jurisdiction to revoke Hibbs's commercial driver's license. We disagree and order reinstatement of the Department's revocation order.

## II.

▆▆▆ We hold that the verification requirement of section 42–2–126(3)(b), C.R.S. (2002), did not require notarization and was satisfied in this case by Barger's signature and affirmation, under penalty of perjury, that the facts contained in her report on the Department's form were true to the best of her belief.

## A.

### Standard of Review

Hibbs argues that the term "verified report" in section 42–2–126(3)(b) meant a report notarized or otherwise attested to before a third party. He reasons that the preceding subsection, § 42–2–126(3)(a), C.R.S. (2002), for revocation of a non-commercial vehicle driver's license, contained language expressly dispensing with notarization, while subsection 3(b) applicable to commercial vehicle drivers did not, thereby implying that notarization was required in the commercial driver situation.

▆▆▆ We review questions of statutory construction de novo. *Colo. Dep't of Labor & Employment v. Esser*, 30 P.3d 189, 194 (Colo. 2001). While statutory construction is ultimately a judicial responsibility, we consult and ordinarily defer to the agency's guidance, rules, and determinations, if they are within the agency's statutory authority and do not contravene constitutional requirements. *Wash. County Bd. of Equalization v. Petron Dev. Co.*, 109 P.3d 146, 150 (Colo. 2005).

## B.

### Administrative Revocation of a Commercial Vehicle Driver's License for Driving Under the Influence of Alcohol

In Colorado, commercial vehicle drivers are held to a higher standard than those

holding other driving privileges. At the time of Hibbs's arrest, a commercial vehicle driver's license was subject to revocation for proof of driving with an alcohol concentration of 0.04 or more grams of alcohol per two hundred ten liters of breath. § 42–2–126(2)(a)(III), C.R.S. (2002). A one year revocation resulted for the first offense. § 42–2–126(6)(b)(III), C.R.S. (2002). The trigger for revocation of the privilege to drive any other motor vehicle was 0.10. § 42–2–126(2)(a)(I), C.R.S. (2002). The first offense of that section resulted in a three month revocation. § 42–2–126(6)(b)(I), C.R.S. (2002).

In 2002, the administrative revocation of a driver's license for driving while intoxicated proceeded in two steps: first a law enforcement officer arrested the driver and submitted to the driver and the Department materials specified in either subsections 42–2–126(3)(a) or (b); second, based upon the materials submitted by the officer under subsection 3(a) or 3(b), the Department determined whether to proceed and revoke the arrested driver's license. § 42–2–126(4)(a).

Subsections 42–2–126(3)(a) and (b) were slightly different. In regard to a commercial vehicle driver's license, subsection 3(b) stated that the officer would forward to the Department a "verified report":

A law enforcement officer who has probable cause to believe that a person was driving a commercial motor vehicle with a blood alcohol concentration of 0.04 or more ... *shall forward* to the department *a verified report* of all information relevant to the enforcement action, including information that adequately identifies the person, a statement of the officer's probable cause for belief that the person committed such violation, a report of the results of any tests that were conducted, and a copy of the citation and complaint, if any, filed with the court.

§ 42–2–126(3)(b), C.R.S. (2002)(emphasis added). In regard to a non-commercial vehicle driver's license, subsection 3(a) stated that the officer would forward an affidavit to the Department dated, signed, and sworn to by the law enforcement officer under penalty of perjury. This affidavit did not need to be

notarized or otherwise attested to by a third party:

Whenever a law enforcement officer has probable cause to believe that a person has violated section 42–4–1301(2) ... the law enforcement officer having such probable cause ... *shall forward* to the department *an affidavit* containing information relevant to legal issues and facts which must be considered by the department .... The executive director of the department shall specify to law enforcement agencies the form of the affidavit, the types of information needed in the affidavit, and any additional documents or copies of documents needed by the department to make its determination in addition to the affidavit. *The affidavit shall be dated, signed, and sworn to by the law enforcement officer under penalty of perjury, but need not be notarized or sworn to before any other person.*

§ 42–2–126(3)(a), C.R.S. (2002)(emphasis added).

Section 42–2–126(5)(d), C.R.S. (2002), gave the Department the power to administer these provisions and to "provide forms for notice of revocation ... to law enforcement agencies" and to "establish a format for the affidavits required." Pursuant to this legislative grant of administrative authority, the Department determined that the statutory sections applicable to commercial and other vehicle licenses could be met by an officer's signed oath on a unitary form applicable to commercial as well as all other drivers, without the need for notarization or other attestation before a third party. This form provided for entry of the basic probable cause, report, and notice of revocation information required by subsections 42–2–126(3)(a) and (b).

We determine that the Department acted within its authority in adopting Department of Revenue Form DR–2576, "Affidavit and Notice of Revocation." This form complied with section 42–2–126(3)(b)'s verification provision by providing for the officer's signature under oath, without the necessity of notarization or other attestation before a third party.

### 1. The Officer's Signature Under Oath on the Department's Form Satisfied the Legislature's Directive for a Verified Report

We reject Hibbs's contention that a "verified report" in section 42–2–126(3)(b) meant a notarized report. We conclude that the term "verified report" in section 3(b) was satisfied when the law enforcement officer filled out and signed under oath Department of Revenue Form DR–2576 that set forth an identification of Hibbs, Barger's probable cause for her belief that Hibbs drove a commercial vehicle while under the influence of alcohol, and a report concerning the time and result of the intoxilyzer test. Along with this report, Barger forwarded to the Department a number of other police department documents evidencing and enforcing against Hibbs's conduct in driving a commercial vehicle while intoxicated, in violation of Colorado laws. The report and its accompanying documentation amply satisfied the requirements of section 42–2–126(3)(b).

 We defer to an agency's statutory interpretation that is reasonable and within the scope of its authority. *Wash. County Bd. of Equalization v. Petron Dev. Co.*, 109 P.3d 146, 150 (Colo.2005); *Lobato v. Indus. Claim Appeals Office*, 105 P.3d 220, 223 (Colo.2005). Our duty is to effectuate the General Assembly's intent and, in order to do so, we give statutory words and phrases their familiar and generally accepted meaning; and we harmonize, if possible, potential conflicting provisions of the statutes and avoid constructions that defeat legislative intent. *Wash. County Bd. of Equalization*, 109 P.3d at 149; *Bd. of Dirs., Metro Wastewater Reclamation Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 105 P.3d 653, 657 (Colo.2005).

Here, the General Assembly expressly conferred upon the Department authority to adopt a form or forms to implement the revocation notice, report, and probable cause affidavit provisions of subsections 42–2–126(3)(a) and (b). § 42–2–126(5)(d), C.R.S. (2002). The Department did create such a form, but Hibbs suggests that we reject it. In making this argument, Hibbs would substitute the term "notarized" for the term "verified" even though the General Assembly actually chose to use "verified" in subsection 42–2–126(3)(b). We will not do this. *See Colo. Dep't of Labor & Employment v. Esser*, 30 P.3d 189, 196 (Colo.2001)(refusing to add words to the statutory provision that would undermine the General Assembly's intent to provide a speedy, efficient, and timely presentation of facts to the agency decision-makers).

The word "verified" is a broader term than "notarized," and the Department had the statutory authority to specify the form of verification it would utilize. The familiar and generally accepted meaning of "verified" includes but is not limited to notarization or attestation before a third party. *Webster's Dictionary* defines "verified" as "confirmed as to accuracy or truth by acceptable evidence, action, etc." *Webster's Encyclopedic Unabridged Dictionary of the English Language* 2114 (1996). *Black's Law Dictionary* defines "verify" and "verification" to include both attestation before a third party and other confirmation. "Verification" is either "[a] formal declaration made in the presence of an authorized officer, such as a notary public, or *(in some jurisdictions) under oath but not in the presence of such an officer, whereby one swears to the truth of the statements in the document,*" "[a]n oath or affirmation that an authorized officer administers to an affiant or deponent, or, "[l]oosely, acknowledgement." *Black's Law Dictionary* 1593 (8th ed.2004)(emphasis added). To *"verify"* is "[t]o prove to be true; to confirm or establish the truth or truthfulness of; to authenticate" or "[t]o confirm or substantiate by oath or affidavit; *to swear to the truth of.*" *Id.* at 1594 (emphasis added); *see Esser*, 30 P.3d at 196 (recognizing that a "verified report" when required by statute may include a written statement given under oath).

Hibbs points out that the language of subsection 42–2–126(3)(a) applicable to non-commercial vehicle drivers expressly excluded any requirement to notarize or swear to the officer's oath before a third party, whereas subsection 42–2–126(3)(b)'s verified report provision did not include this disclaimer. The court of appeals reasoned that, because subsection 42–2–126(3)(b) did not exclude notarization, the General Assembly must have

intended notarization or some other form of third party attestation to make the officer's report and documentation more reliable. *Hibbs v. Colo. Dep't of Revenue*, 107 P.3d 1061, 1064 (Colo.App.2004). We disagree.

Subsection 42–2–126(3)(a)'s use of the word "notarization" demonstrates that the General Assembly was fully aware of this term and how to use it. Nowhere in the statute's revocation provisions did the General Assembly actually require notarization. Instead, in subsection 42–2–126(3)(b) applicable to commercial vehicle drivers, it chose the words "verified report" and assigned to the Department the choice of which type of verification to actually employ.

In the very next statutory provision, subsection 42–2–126(4)(a), that refers to both subsections 3(a) and 3(b)—the operative provision for the Department's exercise of its revocation authority—the General Assembly again chose not to specify notarization and simply referred to the affidavit and relevant documents:

> (4)(a) *Upon receipt of the affidavit of the law enforcement officer and the relevant documents required by subsection (3) of this section,* the department shall make the determination (of the intoxication level as the basis for passenger or commercial driver's license revocation). *The determination shall be based upon the information contained in the affidavit and the relevant documents.*

§ 42–2–126(4)(a) (emphasis added).

Hibbs's suggestion that we rewrite subsection 42–2–126(3)(b) to require a specific type of verification, i.e., notarization, also fails because Hibbs misconstrues the General Assembly's intent. He argues that the verification requirement should be a notarization requirement in order to impose a higher standard of reliability on law enforcement officers. But, the 0.04 limit applicable to commercial drivers actually demonstrates that it was the drivers whom the General Assembly held to a higher standard in light of the greater danger posed to citizen safety from operating big commercial rigs while intoxicated. The legislative statement of purpose to section 42–2–126 plainly states that its intent is to safeguard the safety of

citizens with speedy revocation of intoxicated drivers' licenses, while protecting the rights of those accused through a full administrative hearing, if requested:

> **Revocation of license based on administrative determination.**
>
> (1) The purposes of this section are:
>
> (a) To provide *safety for all persons using the highways of this state by quickly revoking the driver's license of any person who has shown himself or herself to be a safety hazard by driving with an excessive amount of alcohol in his or her body* and any person who has refused to submit to an analysis as required by section 42–4–1301.1;
>
> (b) *To guard against the potential for any erroneous deprivation of the driving privilege by providing an opportunity for a full hearing.*

§ 42–2–126(1)(a)–(b), C.R.S. (2002)(emphasis added). The legislative history reinforces this intent with specific emphasis on the purpose for imposing stricter standards on commercial vehicle drivers:

> Hopefully to curtail and get some of the worst actors off the road and maintain the integrity that the Motor Carrier Association and most of the trucking associations support across the country that the commercial driver is a professional driver and can adhere to a very strict standard similar to airline pilots and those types of people who travel a lot of miles with a lot of our own safety involved.

*An Act Concerning Commercial Motor Vehicles Drivers' Licenses: Hearing on H.B. 1228 Before the Sen. Trans. Comm.,* 57th Gen. Assemb. of Colo. (1989)(statement of John Duncan, Deputy Director of the Department of Motor Vehicles)(audio recording of March 7, 1989).

**2. The Report and Documentation the Officer Supplied to the Department Amply Complied with Subsection 42–2–126(3)(b)**

After a full administrative hearing, the Department's hearing officer found that Hibbs was driving a commercial vehicle while intoxicated at a level nearly four times the legal

limit. The Department commenced this hearing after receiving Barger's verified report on the Department's form, along with other police department documents that included the signed intoxilyzer test results, certified intoxilyzer records, a Silverthorne Police Department Incident Narrative, an arrest report, a DUI report, an arrest summary report, a notarized warrantless arrest probable cause statement, a Summit County Sheriff's Office Arrest Summary Report, and summonses for driving a vehicle under the influence of alcohol, driving a vehicle with excessive alcohol content in his blood or breath, and failing to obey a traffic control device.

Under the statutory design, the role of the police officer is to gather and forward to the Department evidence of the intoxicated driver's operation of a commercial vehicle and to place that driver on initial notice of the license revocation proceeding that the Department has authority to conduct under its revocation authority. Hibbs received proper notice of the revocation proceeding from Barger and from the Department after it had received Barger's verified report on the Department's form and the accompanying documentation. The record evidences compliance with then-existing subsection 42–2–126(3)(b). At his request, Hibbs received a full administrative hearing. Contrary to the rulings of the district court and the court of appeals, there was no jurisdictional defect in the Department's revocation proceeding.

### III.

Accordingly, we reverse the judgment of the court of appeals. We remand this case to the court of appeals with directions ordering the district court to reinstate the Department's action revoking Hibbs's commercial driver's license.

