2012 COA 137

**PFW, INC., a Texas corporation,** **Plaintiff–Appellant,**

v.

**RESIDENCES AT LITTLE NELL DE-** **VELOPMENT, LLC, a Delaware limited** **liability company, Defendant–Appellee.**

No. 11CA1656.

Colorado Court of Appeals, Division I.

Aug. 16, 2012.

Frascona Joiner Goodman and Greenstein, PC, Corey T. Zurbuch, Boulder, Colorado, for Plaintiff–Appellant.

Greenberg Traurig, LLP, David H. Goldberg, Jeffrey Lippa, Cuneyt Akay, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge TAUBMAN.

¶ 1 In this action to rescind a contract for the purchase of a fractional interest in real estate, plaintiff, PFW, Inc. (PFW), appeals the trial court's judgment in favor of defendant, the Residences at Little Nell Development, LLC (RLND), on its rescission claim arising under the Interstate Land Sales Full Disclosure Act (ILSFDA), 15 U.S.C. §§ 1701 to 1720. PFW also appeals the trial court's order denying its motion to vacate an arbitration award in favor of RLND on other non-ILSFDA claims. We affirm.

## I. Background

¶ 2 In 2005, RLND began developing a private residential complex consisting of eight hotel units, eight affordable housing units, three commercial units, and twenty-six condominium units at the base of Aspen Mountain.[1] RLND sold one-eighth interests in the condominium units.

¶ 3 By December 2006, a fractional interest[2] in a four-bedroom condominium unit sold for $3 million. Ivan Jack Miller entered into a purchase agreement with RLND for such an interest at this price. He tendered $450,000 in escrow as earnest money. In May 2008, Miller assigned his rights under the purchase agreement to PFW, an entity of which Miller is owner and president.

¶ 4 The construction completion deadline and closing date were scheduled for December 2008. By this time, the price of fractional interests had fallen due to the downturning economy. Prior to completion of construction of the project, PFW sent RLND a notice of its intent to rescind the purchase agreement based on asserted violations of ILSFDA and breaches of the purchase agreement, and demanded release of its earnest money. PFW then filed suit against RLND asserting eleven claims, including violations of ILSFDA and the Colorado Consumer Protection Act, breach of contract, and fraudulent inducement.

¶ 5 PFW alleged these same claims in arbitration pursuant to the arbitration clause of the purchase agreement. It subsequently moved to stay arbitration, and RLND countered with a motion to compel. Based on the trial court's ruling in other cases involving RLND that non-ILSFDA claims were subject to arbitration, the parties proceeded to a two-day arbitration hearing on these nine

1. The project also contains seventy parking spaces, although the parties do not dispute that these spaces are nonexclusive.

2. The parties refer to PFW's one-eighth interest as a "fractional interest." A "time share estate," in contrast, is defined in the Colorado Common Interest Ownership Act, section 38–33–110(5), C.R.S.2011, as either an interval estate or a time-span estate.
Unlike PFW's interest, the time-span time share estate appears to require the exclusive right to possession and occupancy of a *particular unit* during a defined, annually recurring period of time. *See* § 38–33–110(8), C.R.S.2011; *Bernhardt v. Hemphill*, 878 P.2d 107, 113 (Colo.App. 1994) (membership interest that did not transfer exclusive use of any particular unit for any particular annual period was not a time share estate). Nor does PFW's interest satisfy the definition of an "interval estate." § 38–33–110(1), C.R.S.2011.

claims. The arbitrator found PFW in default under the purchase agreement, and entered interim and final awards in favor of RLND on all counts.

¶ 6 PFW moved to vacate this arbitration award in May 2010. The trial court denied its motion.

¶ 7 Following a two-day hearing, the trial court entered judgment in favor of RLND on the two ILSFDA claims in July 2011.

¶ 8 This appeal followed.

## II. ILSFDA Exemption

¶ 9 PFW contends the trial court erred in denying its statutory claim to rescind its purchase of the fractional ownership interest solely because the court held that RLND's condominium project was exempt from ILSFDA's registration and disclosure requirements. Because we conclude that the fractional interests in the project's twenty-six condominium units are not "lots" under the ILSFDA, and were therefore exempt from registration and disclosure requirements, we disagree.

### A. Standard of Review

¶ 10 Whether an interest is a "lot" under the ILSFDA requires interpretation of the purchase agreement documents, the statute, and regulations promulgated by the U.S. Department of Housing and Urban Development (HUD). *See Giralt v. Vail Vill. Inn Associates*, 759 P.2d 801, 806 (Colo.App. 1988).

¶ 11 "Where the evidence of agreement consists of documents, the determination of their effect is a matter of law for the court." *Id.*

¶ 12 Statutory construction is also a question of law we review de novo. *Colorado Dep't of Revenue v. Hibbs*, 122 P.3d 999, 1002 (Colo.2005). Because we are interpreting federal statutes and regulations, we employ rules of federal statutory interpretation. *Great Plains Nat'l Bank, N.A. v. Mount*, 2012 COA 66 ¶ 11, 280 P.3d 670, 672. We look to the plain language of the federal statute, giving words and phrases their plain and ordinary meaning. *Id.* We also interpret federal regulations to give them affect according to their plain meaning. *USA Tax Law Center, Inc. v. Office Warehouse Wholesale, LLC*, 160 P.3d 428, 431 (Colo.App.2007).

¶ 13 In our review, we defer to a federal agency's regulations if they are within the agency's statutory authority, so long as they are reasonable. *Koch Industries, Inc. v. United States*, 603 F.3d 816, 821 (10th Cir. 2010); *Giralt*, 759 P.2d at 805.

### B. Legal Framework

¶ 14 The underlying purpose of the ILSFDA is to ensure that, prior to purchasing real estate, a buyer is informed of facts which will enable him or her to make an informed decision. *Law v. Royal Palm Beach Colony, Inc.*, 578 F.2d 98, 99 (5th Cir.1978). To this end, the ILSFDA imposes certain requirements on developers who sell or lease lots in a subdivision. 15 U.S.C. §§ 1703 to 1707. If these requirements are not met, a purchaser has a right of rescission under 15 U.S.C. § 1703. *See also* 15 U.S.C. § 1709 (right to sue).

¶ 15 However, the ILSFDA exempts from its requirements certain types of real estate. 15 U.S.C. § 1702. As relevant here, the ILSFDA's registration and disclosure requirements do not apply to "the sale or lease of lots in a subdivision containing fewer than one hundred lots." 15 U.S.C. § 1702(b)(1). The statute does not define the term "lot."

¶ 16 In HUD's implementing regulations of the ILSFDA, *see* 24 C.F.R. pts. 1710 to 1730, "lot" is defined as:

> any portion, piece, division, unit, or undivided interest in land located in any State or foreign country, if the interest includes the right to the exclusive use of a specific portion of the land.

24 C.F.R. § 1710.1(b).

¶ 17 Additionally, HUD has promulgated interpretive rules concerning the exemptions. See Supplemental Information to Part 1710: Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act, 61 Fed. Reg. 13596–01 (1996).

¶ 18 The Guidelines, Part II(d), further provide:

[The term "lot"] applies to the sale of a condominium or cooperative unit or a campsite as well as a traditional lot.

If the purchaser of an undivided interest or a membership has exclusive repeated use or possession of a specific designated lot even for a portion of the year, a lot, as defined by the regulations, exists. For purposes of definition, if the purchaser has been assigned a specific lot on a recurring basis for a defined period of time and could eject another person during the time he has the right to use that lot, then the purchaser has an exclusive use.

Although this interpretive rule does not "set absolute standards," HUD's guidance on the meaning of its regulations is helpful. *See Giralt,* 759 P.2d at 808 (relying on HUD's application of the term "lot" to a condominium).

¶ 19 The parties do not dispute, and we concur, that HUD's interpretation of the term "lot" and its *Guidelines* are reasonable. Therefore, we defer to them. *See id.* at 805–06.

## C. Analysis

■ ¶ 20 According to PFW's purchase agreement with RLND, PFW purchased an "undivided [one-eighth] fee simple ownership interest as a tenant in common" in a four-bedroom "fractional ownership unit." The purchase agreement incorporates by reference the Declaration of Condominium for the Residences at Little Nell (Declaration).

¶ 21 As relevant here, the Declaration provides:

Each purchaser of a Fractional Interest will own a one-eighth ... undivided interest in a specific Fractional Ownership Unit The Fractional Ownership Plan requires that each Owner of a Fractional interest participate in a priority based rotating priority reservation system that will guarantee the Owner a maximum of four ... weeks of "Planned Vacation Weeks" per Club year—[two in the winter and two in the summer], each reserved in accordance with the Rotating Priority Reservation System/Reservation Priority Chart.

¶ 22 The Declaration further states that a fractional interest owner "may occupy a different Fractional Ownership Unit within his or her designated Unit Type [three-bedroom or four-bedroom] each time the Owner Visits the Project."

¶ 23 The Fractional Ownership Reservation Policies and Procedures (Reservation Policies), in turn, describe the rotating priority reservation system that is designed to equitably allocate planned vacation weeks and available fractional ownership units to all the fractional owners. It defines a "planned vacation week" as "the basic entitlement" of an owner of a fractional interest to use and occupy a designated unit type for four weeks each year.[3]

¶ 24 As discussed, the condominium project consists of twenty-six condominium units, each divided into eight fractional interests. PFW contends that these 208 interests constitute "lots" under ILSFDA. The trial court disagreed based on its finding that "no right of exclusive possession attaches to ... ownership" of these fractional interests. Therefore, it concluded, the condominium project, including the condominium units, eight hotel units, and eight affordable housing units, contains fewer than one hundred lots and is exempt under section 1702(b)(1).

¶ 25 PFW contends that the trial court's conclusion is erroneous because, like traditional condominiums, the fractional ownership interests in the RLND condominium units possess indicia of real estate. We disagree.

¶ 26 The Secretary of HUD has treated condominiums as lots under the ILSFDA even though they are not undeveloped plots of land because they carry indicia of real estate. 38 Fed. Reg. 23,866 (1973); *Winter v. Hollingsworth Properties, Inc.,* 777 F.2d 1444, 1447 (11th Cir.1985) (statute applied to certain categories of improved land); *see also Giralt,* 759 P.2d at 808. However, HUD's own regulations also expressly require that an ownership interest "includ[e] the right to exclusive use of a specific portion of the land." 24 C.F.R. § 1710.1(b); *see Giralt,* 759 P.2d at 808 (parking units are "interests in

---

**3.** Owners may also reserve "space available nights" based on a lottery system.

real estate and a form of ownership of space *to which the owners have the right to exclusive use* " and therefore "lots") (emphasis added); *see also Winter*, 777 F.2d at 1447 (citing the exclusivity requirement of 24 C.F.R. § 1710.1). Thus, indicia of real estate alone do not satisfy the regulatory definition.

¶ 27 PFW next contends that the fractional ownership interests nonetheless constitute "lots" because they include the right to exclusive use of a specific portion of the condominium units. Specifically, it maintains, the fractional owners are guaranteed the exclusive use of a designated unit type for four weeks every year.

¶ 28 According to HUD's *Guidelines,* a lot exists only if the purchaser of an interest has exclusive repeated use or possession of *that* specific designated lot. However, as provided by the Declaration, no fractional owner is guaranteed use of a specific designated unit. *See Guidelines* pt. II(b). Rather, an owner of an interest in a three-bedroom unit or a four-bedroom unit may be placed, respectively, in any one of the project's nineteen three-bedroom units or seven four-bedroom units. Because PFW's exclusive use is limited to a specific unit type—four bedroom units—under PFW's theory, only two lots would exist among the twenty-six condominium units. In any event, PFW's fractional interest differs from *Winter*'s fee simple interest in a single condominium unit, 777 F.2d at 1445, or *Giralt*'s exclusive-use parking space, 759 P.2d at 808.

■ ¶ 29 Further, the time share interest in the campsite example contained in the *Guidelines* and cited by RLND is not dispositive. In that example, owners in a camping subdivision have a nonexclusive right to use all campsites on a space available basis and, conversely, no right to use any specific campsite. Thus, the campsite owners do not have exclusive use of any campsite. Although PFW is not guaranteed use of any specific condominium unit, it is at least guaranteed use of *some* four-bedroom unit for four weeks of the year, as determined at the start of each year. Accordingly, whether a particular fractional interest is a "lot" must be determined on a case-by-case basis. *See generally* James R. Martin, *Timesharing in Colorado,* 11 Colo. Law. 2804–05 (1982) (describing various combinations of "fixed and floating space and time" that owners use in time share arrangements).

¶ 30 Here, as the trial court concluded, "[n]o owner receives a guaranty or has any right to insist that he occupy a particular unit at a particular time." Therefore, the owners of fractional interests in the RLND condominium units do not enjoy exclusive use of a specific portion of the project.

¶ 31 Finally, PFW contends that, even if the Declaration and the Reservation Policies limit the exclusivity of an owner's use of his or her fractional interest, these documents are subject to amendments at any time and do not define the interest. Rather, it maintains, the fractional interest conveyed to each owner in the purchase agreement constitutes a "lot" because the purchase agreement is devoid of any use restrictions. We are not persuaded.

¶ 32 Pursuant to the purchase agreement, PFW purchased an ownership interest "as defined and described in the [Declaration]." Thus, the purchase agreement incorporated the use restrictions of the Declaration, and in turn, the Reservation Policies. *See Premier Farm Credit, PCA v. W–Cattle, LLC,* 155 P.3d 504, 517 (Colo.App.2006) (multiple documents that are part of a single transaction should be read together as a whole, not in isolation).

■ ¶ 33 Further, a court must determine whether ILSFDA applies on the date a purchaser signs the purchase agreement. *Bodansky v. Fifth on Park Condo, LLC,* 635 F.3d 75, 85 (2d Cir.2011); *see also Winter,* 777 F.2d at 1449 ("sale" under ILSFDA occurs when buyer signs purchase agreement because buyer must receive information to make informed decision prior to purchase commitment). Therefore, for purposes of our analysis, the use restrictions described above define the fractional ownership interests in this condominium project, regardless of whether the Declaration or Reservation Policies may be amended in the future.

¶ 34 Accordingly, the trial court did not err in denying PFW's ILSFDA claims.

### III. Motion to Vacate Arbitration Award

¶ 35 PFW next contends that the trial court erred in denying its motion to vacate the arbitration award granted in favor of RLND on PFW's remaining non-ILSFDA claims because the award was procured by fraud. We discern no error.

### A. Standard of Review

¶ 36 We review de novo a trial court's legal conclusions on a motion to confirm or vacate an arbitration award. *Braata, Inc. v. Oneida Cold Storage Co.*, 251 P.3d 584, 587 (Colo. App.2010).

¶ 37 In the absence of statutory grounds to vacate an arbitration award, a court must affirm the award without reviewing its merits. *Id.*

### B. Analysis

¶ 38 Under the Colorado Uniform Arbitration Act, a court must vacate an arbitration award if the award was "procured by corruption, fraud, or other undue means." § 13–22–223(1)(a), C.R.S.2011.

¶ 39 Whether an arbitration provision in a contract is void due to the fraudulent conduct of a party is a question for a trial court; however, whether the contract as a whole is void or voidable because of fraud is a question to be decided by the arbitrator. *See Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116, 121 (Colo.2007) (fraudulent inducement); *BRM Constr., Inc. v. Marais Gaylord, L.L.C.*, 181 P.3d 283, 285 (Colo. App.2007); *see also* § 13–22–206(3), C.R.S. 2011 ("[a]n arbitrator shall decide ... whether a contract containing a valid agreement to arbitrate is enforceable").

¶ 40 PFW contends that RLND procured the arbitration award in its favor by fraudulently concealing that it had not properly registered with the Colorado Division of Real Estate (Division) when it executed the purchase agreement.[4] Any contract for the sale of a subdivision or part thereof entered into by a developer who fails to duly register with the Division "shall be voidable by the purchaser and unenforceable by the developer." § 12–61–407, C.R.S.2011. Therefore, PFW maintains, RLND fraudulently concealed that it lacked authority to enforce the arbitration provision of the purchase agreement when it moved to compel arbitration of the non-ILSFDA claims. Accordingly, PFW challenges RLND's continued and purportedly fraudulent reliance on the enforceability of the purchase agreement as the basis for voiding the arbitration award.

¶ 41 The *Ingold* court distinguished challenges to the enforceability of an arbitration provision in a contract based on allegations of fraud and those "directed more broadly to the contract as a whole." 159 P.3d at 121. PFW's challenge is one of the latter. Therefore, as the trial court correctly concluded, its challenge to the enforceability of the purchase agreement was an issue for the arbitrator, not the trial court. *Id.*

¶ 42 We are not persuaded that PFW had no opportunity to raise this issue in the arbitration proceeding because it did not know of RLND's registration status until the arbitration award had been finalized. The Division's file on RLND's registration and licensure was discoverable and open for public inspection. Additionally, in its supplemental prehearing brief before the arbitrator, RLND repeatedly maintained that it was duly registered with the Division since May 2004. Accordingly, it was incumbent upon PFW to raise in the arbitration proceeding any claims to void the purchase agreement based on RLND's registration status.

¶ 43 Because the issue was not properly before the trial court, it correctly denied PFW's motion to vacate the arbitration award.

### IV. Improper Language in PFW's Reply Brief

¶ 44 In its reply brief, PFW repeatedly accuses RNLD of intentionally misleading this court. "Such rhetoric hinders the court in deciding the merits of the appeal.... It need not address this issue.

---

4. RLND disputes this contention, maintaining that it was properly registered. However, we

also disserves parties and debases both the legal profession and the judicial system." *Martin v. Essrig,* 277 P.3d 857, 860 (Colo. App.2011).

¶ 45 Our Rules of Professional Conduct prohibit discourteous and uncivil behavior toward any person involved in the legal system, including ad hominem attacks on opposing counsel. *Id.; see* Colo. RPC Preamble: A Lawyer's Responsibilities [9]; Colo. RPC 3.5 cmt.4.

¶ 46 Fortunately, instances where counsel "intentionally mislead the court" are rare. When such instances occur, a party may point them out in an appropriate, measured way. However, when a party repeatedly uses phrases such as "falsely quotes" or "blatant self-serving misquote or an intentional misrepresentation," its advocacy ceases to be persuasive.

¶ 47 We admonish counsel to avoid such inappropriate advocacy in the future.

¶ 48 The judgment and order are affirmed.

JUDGE RUSSEL and JUDGE PLANK concur.